Robert L. BROWN, Petitioner,

v.

Louis A. HEYD, Jr., Sheriff, Parish of Orleans, Louisiana, Defendant.

Misc. No. 1275.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 7, 1967.

James B. O'Neill, Kenner, La., for petitioner.

Robert E. Peyton, for defendant.

RUBIN, District Judge:

Robert L. Brown was charged in a Louisiana court with unlawful possession of heroin.[1] He was convicted, and sentenced to serve ten years. The conviction was affirmed by the Louisiana Supreme Court.[2] Following the pattern that has apparently become standard,[3] Brown now seeks habeas corpus.

Most of the facts found by the Louisiana Supreme Court are not seriously disputed. On May 26, 1966, the Narcotics Squad of the New Orleans Police Department received information that a school bus driver was delivering what the school children described as pills. The police arrested the driver, found that he was a "terrific addict" and had scars resulting from narcotics injections "all over his arms." The school children had also re-

---

1. R.S. 40:962.

2. State v. Brown, La., 202 So.2d 274 (1967).

3. Applications for habeas corpus in federal courts have increased from a few hundred per year in the 1940's to 5,786 in 1965. President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, 1967.

ported that the driver made regular stops at his own home on Cherry Street. The police therefore obtained a search warrant and three officers rushed to the driver's home to search it before any evidence that might be there could be disposed of. They were dressed in plain clothes and drove an unmarked car.

As the police car approached the Cherry Street residence, they saw a Chevrolet parked in front of the house. William J. Hadrick was at the driver's seat, and Brown was about to get in the car. The police knew that Hadrick and Brown were narcotics addicts, and Brown recognized the police. Brown therefore jumped in the car, and Hadrick drove it away rapidly. The police gave chase, sounding their siren. They saw Brown put his hand to his mouth and concluded, based on their prior experience, that he might be trying to swallow evidence.

The Chevrolet turned a street corner and, as it did so, one of the police officers fired three shots in the air. When the third shot was fired, Hadrick suddenly stopped the Chevrolet. The police officers rushed to the Chevrolet. They arrested Hadrick who submitted peacefully. Brown resisted arrest, so the officers forcibly removed him from the Chevrolet. While two of the officers were subduing him, the third officer saw a white capsule on the seat of the

Chevrolet where Brown had been sitting. The police later searched the automobile without a warrant, and found a brown paper bag containing two glass eyedroppers, one plastic medicine dropper, one bottle cap, and one needle holder, the type of paraphernalia used by addicts in taking narcotics. A motion to suppress this evidence was filed in state court, and the court suppressed all of the evidence found in the automobile except the capsule found on the seat. It was later determined that this capsule contained heroin.

Brown and Hadrick, together with the school bus driver, were taken to the bus driver's house. Brown was advised that: he had a right to speak or remain silent; anything he said might be used against him; and he had a right to counsel. He was not told that he had a right to have an attorney present when he spoke, if he decided to make a statement [4] nor was he told that, if he didn't have funds, the court would appoint a lawyer to represent him.[5] He did, however, say, in the course of the attempt by the police officers to warn him, "I know all of that, Mr. Lampard."

Thereafter, both Brown and Hadrick told the police that they used narcotics and each said that he "had did up" (injected narcotics) that day. Testimony

---

4. State Transcript, page 177; State Transcript, page 200.

5. State Transcript, pages 200–201. The state court found in its Per Curiam to Bill of Exception No. V that:
"This bill was reserved when the State offered the oral statements of the defendants, which statements were not confessions, but admissions against interest.
"Officer Favalora testified that after the arrest of the two defendants, he informed them of their rights, that is, he told them that they were entitled to have an attorney and if they could not afford to pay an attorney that the Court would appoint an attorney for them. That anything that they said could be used against them in a court of law, and that he did not, nor did any of the other officers in his presence, threaten, abuse, or in any way influence the defendants to make a statement."

\* \* \* \* \*

"According to the testimony of all the witnesses pertaining to this issue, the defendants were amply apprised of their constitutional rights and their admission against interest was admissible."
Officer Favalora's testimony however was as follows:
"Q. Did you tell him he had that right to counsel even though he didn't have the funds to hire him?"
"A. No."
"Q. Did you afford him any opportunity to procure a lawyer?"
"A. No, sir, I did not."
He later testified:
"Q. And your statement to them was that they had a right to counsel?"
"A. Right."
"Q. You didn't explain what that meant any further than that, did you?"
"A. No, sir. That's all I told them."

by the police concerning these statements was admitted in evidence over objection.

## EXHAUSTION OF REMEDIES

■ The petitioner has exhausted his State remedies by appealing to the State Supreme Court although he did not seek a rehearing from it after his conviction was affirmed. A federal court has "discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the constitution." Ex parte Royall, 1886, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868.

■ A defendant who has unsuccessfully appealed a state conviction to the state supreme court is not required to seek relief by collateral attack in state habeas corpus proceedings in order to establish exhaustion of state remedies. Section 2254 does not contemplate repetitious applications to state courts. Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

There apparently are no reported decisions dealing with the question whether the doctrine of exhaustion of remedies requires an applicant for habeas corpus to seek a rehearing from a state supreme court that has denied his appeal. But in Re McCoy, in the United States District Court for the Eastern District of North Carolina, dealing with a slightly different factual situation, indicated the current view with respect to what an applicant must do before applying to a federal court for habeas corpus.

"In considering the question of the exhaustion of state remedies, it should be noted that in recent years the federal courts have construed the doctrines as codified in Title 28 U.S.C.A. § 2254 with liberality. No longer is the applicant obligated to seek other remedies available to him within the state once he has presented his contention to the highest state court and has had denied there the relief sought." 233 F.Supp. 409, 411 E.D. N.C., 1964.

■ An applicant for habeas corpus who has sought direct review of his conviction in the highest state court has exhausted his state remedies even though he has sought neither certiorari to the United States nor collateral review in any state court. Whippler v. Balkcom, 5 Cir., 1965, 342 F.2d 388; United States ex rel. Rogers v. Davis, 5 Cir., 1963, 323 F.2d 653.

■ An applicant who has once sought review of his case by the highest court of the state should not be required to undergo the expense and delay associated with an application for rehearing of the same issues by the state supreme court as a prerequisite to applying to federal court for habeas corpus review.[6]

## WARNINGS ABOUT RIGHT TO COUNSEL

The application for habeas corpus is based on claims that:

(1) Brown was unlawfully arrested.

(2) There was an unlawful search and seizure.

(3) Brown was mistreated during interrogation.

(4) The Court improperly admitted testimony concerning the habits of addicts.

(5) Brown was denied the right to counsel.

It is unnecessary to review all of these contentions; the decisions of the United

6. The judgment of the State Supreme Court was rendered on June 30, 1967, and Art. 922 of the La.Code of Criminal Procedure allows 14 days within which to apply for rehearing. This time having passed prior to the filing of habeas corpus application on August 17, 1967, the only state remedy available when the application was made was state habeas corpus.

States Supreme Court in *Escobedo* [7] and *Miranda* [8] require the Court to grant the relief sought because testimony was admitted concerning statements made to police officers by the defendant in an interrogation conducted without a warning sufficient under those decisions.

The Louisiana Supreme Court said with regard to the defendant's statements:

"We therefore conclude the trial judge was correct in ruling the statements made to the officers objected to under this complaint were made freely and voluntarily after defendants had been amply apprised of their constitutional rights. As admissions against interest, and also for the purpose of showing guilty knowledge, they were admissible."

■ This Court respects the integrity and responsibility of the courts of the State of Louisiana. Sworn to uphold and defend the Constitution of the United States (as well as of the State of Louisiana), they do so with as much sincerity, intelligence and dedication as any judges in the land, state or federal. But it is my responsibility to determine whether their decision violates the federal constitutional rights asserted by the appellant,[9] and this requires me to examine the record independently to determine whether these federal constitutional rights have been properly safeguarded.[10]

The warnings required by the decisions in *Escobedo* and *Miranda* are summed up in *Miranda* as follows:

"Accordingly we hold that an individual held for interrogation must be *clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation* under the system for protecting the privilege we delineate today. As

7. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964).

8. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

9. "The duty of this Court to make its own independent examination of the record when federal constitutional deprivations are alleged is clear, resting, as it does, on our solemn responsibility for maintaining the Constitution inviolate." Napue v. People of State of Illinois, 1959, 360 U. S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed. 2d 1217. The Court cited "See, e. g., Payne v. State of Arkansas, 356 U.S. 560, 562, 78 S.Ct. 844, 847, 2 L.Ed.2d 975; Leyra v. Denno, 347 U.S. 556, 558, 74 S.Ct. 716, 717, 98 L.Ed. 948; Avery v. State of Georgia, 345 U.S. 559, 561, 73 S.Ct. 891, 892, 97 L.Ed. 1244; Feiner v. People of State of New York, 340 U.S. 315, 322, 323, note 4, 71 S.Ct. 303, 307, 95 L.Ed. 267 (dissenting opinion); Cassell v. State of Texas, 339 U.S. 282, 283, 70 S.Ct. 629, 94 L.Ed. 839; Haley v. State of Ohio, 332 U.S. 596, 599, 68 S.Ct. 302, 303, 92 L.Ed. 224; Malinski v. People of State of New York, 324 U.S. 401, 404, 65 S.Ct. 781, 783, 89 L.Ed. 1029; Ashcraft v. State of Tennessee, 322 U.S. 143, 149, 64 S.Ct. 921, 923, 88 L.Ed. 1192; Ward v. State of Texas, 316 U.S. 547, 550, 62 S.Ct. 1139, 1141, 86 L.Ed. 1663; Smith v. State of Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84; State of South Carolina v.

Bailey, 289 U.S. 412, 420, 53 S.Ct. 667, 670, 77 L.Ed. 1292. See also, e. g., Roth v. United States, 354 U.S. 476, 497, 77 S.Ct. 1304, 1315, 1 L.Ed.2d 1498 (dissenting opinion); Stroble v. State of California, 343 U.S. 181, 190, 72 S.Ct. 599, 603, 96 L.Ed. 872; Sterling v. Constantin, 287 U.S. 378, 398, 53 S.Ct. 190, 195, 77 L.Ed. 375; Southern Pacific Co. v. Schuyler, 227 U.S. 601, 611, 33 S.Ct. 277, 280, 57 L.Ed. 662; Creswill v. Grand Lodge Knights of Pythias, 225 U.S. 246, 261, 32 S.Ct. 822, 56 L.Ed. 1074." For, "If the Constitution and laws of the United States are to be enforced, this Court cannot accept as final the decision of a state tribunal as to what are the facts alleged to give rise to the right or to bar the assertion of it even upon local grounds." Davis v. Wechsler, 1923, 263 U.S. 22, 24, 44 S.Ct. 13, 68 L.Ed. 143. These principles have been repeatedly affirmed. See Ker v. State of California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; New York Times Company v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

10. Massey v. Moore, 1954, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135; People of United States ex rel. Jennings v. Ragen, 1959, 358 U.S. 276, 79 S.Ct. 321, 3 L. Ed.2d 296; Burwell v. Teets, 9 Cir., 1957, 245 F.2d 154; Pike v. Dickson, 9 Cir., 1963, 323 F.2d 856; Greer v. Ellis, 5 Cir., 1962, 306 F.2d 587.

with the warnings of the right to remain silent and that anything stated can be used in evidence against him, *this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead.* Only through such a warning is there ascertainable assurance that the accused was aware of this right." (Emphasis supplied.) 384 U.S. at 471–472, 86 S. Ct. at 1626.

\* \* \* \* \* \*

"In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, *but also that if he is indigent a lawyer will be appointed to represent him.* Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it." (Emphasis supplied.) 384 U.S. at 473, 86 S.Ct. at 1627.

\* \* \* \* \* \*

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. *He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.* Opportunity to exercise these rights must be afforded to him throughout the interrogation. *After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.*" (Emphasis supplied.) 384 U.S. at 478, 86 S.Ct. at 1630.

■ The *Miranda* opinion is explicit. The accused must be warned in advance of interrogation that "he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." This was not done here.

■ Nor can it be said that a different rule applies to Brown's statements because they were not confessions. The *Miranda* opinion disposes of this contention in the following words:

"The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant. No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish de-

grees of incrimination." 384 U.S. at 476, 86 S.Ct. at 1629.

## WAIVER

■ It will not do to suggest that Brown's statement, "I know all of that, Mr. Lampard," constitutes a waiver of the right to the warning that Brown was not given. The United States Supreme Court has advised us, in *Miranda*, that "No amount of circumstantial evidence that the person may have been aware of this right [the right to counsel, as the Court there defined it] will suffice to stand in its stead." 384 U.S. at 472, 86 S.Ct. at 1626. That decision clearly holds that the right to counsel may be waived only if the individual "knowingly and intelligently" does so "after such warnings have been given." 384 U.S. at 479, 86 S.Ct. at 1630.

## MATERIALITY OF ERROR

■ The State contends that it was at worst harmless error to admit Brown's statement. "The question," when the claim of harmless error is made, "is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Fahy v. State of Connecticut, 1963, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. An error that violates a federal constitutional right cannot be held to have been harmless unless the court is "able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. State of California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

In the trial of a case involving a charge of illegal possession of narcotics, the jury would be likely to consider it significant that the defendant himself used narcotics and had used them on the very day when he was charged with illegal possession. In this case, the testimony gained additional significance in the light of the police testimony about the habits of drug addicts. The state contends that there was other testimony from which the jury might have concluded that the defendants were users of narcotics, such as the testimony concerning the tell-tale trackmarks typically found on drug addicts that were seen by the police on both of Brown's arms and on Hadrick's left arm. However, there was no testimony that such "track-marks" indicated a recent injection of narcotics. The only evidence indicating that the defendant was actually using narcotics on the date of his arrest was obtained from his statement. Under these circumstances, the error made in admitting the testimony was not harmless.

## REVIEW IN STATE COURTS

■ Hadrick's Bill of Exception No. IV clearly urges that "his constitutional right to the benefit of counsel during the interrogation" was violated and the introduction of his oral statement was therefore improper. Brown's Bill of Exception No. V merely contends that "these statements against interest were obtained without first affording the defendant an opportunity to consult with an attorney at law" and his argument in the State trial court was directed toward his suggestion that he asked for counsel and was denied the right to one rather than toward the adequacy of the warning. The State trial judge did not believe that Brown made such a request, nor do I. However, with respect to whether Brown adequately raised the constitutional issue, the state trial judge said that Brown's Bill of Exception No. V was "in substance the same as Bill of Exception No. IV, filed on behalf of William J. Hadrick" and "The Court adopts its per curiam to Bill of Exception No. IV, filed on behalf of William J. Hadrick, as the issues in both bills are identical." The per curiam deals squarely with the adequacy of the warning. Therefore it is clear that both the State trial court and State Supreme Court considered whether *Miranda's* requirements had been met. Although both state courts concluded that they had, the evidence compels me to find that the federal constitutional requirements have not been met. Mr. Justice Cardozo long ago said that the criminal should not go free merely because the constable blundered. But the applicant is not being auto-

# 906

matically set free by this grant of the Great Writ. He is being given the right to have a new trial untainted by the admission of evidence that violates federal constitutional requirements. He will be set free only if the District Attorney fails promptly to seek his retrial.

For the reasons stated, the petitioner's conviction and sentence must be set aside, and therefore

It is hereby ordered that Robert L. Brown be discharged from the custody of the State of Louisiana and from the custody of Louis A. Heyd, Jr., Sheriff of the Parish of Orleans, which custody is pursuant to the sentence imposed upon him in the Criminal District Court for the Parish of Orleans on October 14, 1966. But

It is further ordered that the duty to comply with this order is stayed for sixty (60) days to allow the District Attorney for the Parish of Orleans to seek the retrial of the petitioner.