Lynn Edward **WRIGHT**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18865.

United States Court of Appeals
Eighth Circuit.

Feb. 19, 1968.

Rehearing Denied March 22, 1968.

Eugene K. Buckley, of Evans & Dixon, St. Louis, Mo., for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., John A. Newton, St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT and MATTHES, Circuit Judges, and HARRIS, Chief District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by defendant Lynn Edward Wright from his conviction by a jury upon an indictment charging violation of 18 U.S.C.A. § 2113(a) by entering the St. Louis County Federal Savings and Loan Association, a federal savings and loan association, on or about January 24, 1967, with the intent to commit larceny, and from the resulting sentence of fifteen years imprisonment imposed upon the defendant.

The sufficiency of the evidence to support the conviction is not here challenged; hence, a detailed discussion of the evidence is unnecessary. Our examination of the record satisfies us that there is ample substantial evidence to support the conviction.

Codefendant Harry Lawrence Summers, who before trial entered a plea of guilty to the offense here charged, testified that during a five hour interval during the night of January 24 and the early morning of January 25, Wright cut a hole in the roof and ceiling of the loan association building and entered the vault through such opening and unsuccessfully tried to force open the safe in the vault while Summers kept a lookout and kept in communication with Wright by walkie-talkie. The walkie-talkies, saw blades and rope used in the attempted larceny were found in an apartment shared by Summers and Wright. Expert testimony identified portions of the saw blade and the walkie-talkie antenna found on the roof of the loan association building with the items seized in the apartment.

Defendant urges that he is entitled to a reversal of his conviction upon grounds summarized as follows:

I. The court erred in denying defendant's motion to suppress as evidence hacksaw blades, walkie-talkie radios and rope seized in his apartment upon the ground that they were obtained by means of an unlawful search and seizure in violation of his constitutional rights.

II. Prejudicial error in admitting evidence of other alleged offenses on the part of the defendant and the aggravation of such error by the court's erroneous instruction that such evidence could be considered on the issue of intent.

We hold for the reasons hereinafter stated that we find no prejudicial error was committed at defendant's trial and that the judgment of conviction should be affirmed.

I.

Defendant, prior to trial, filed a motion to suppress as evidence three hacksaw blades, two walkie-talkies, and a piece of strong rope taken from defendant's apartment, upon the ground that such items were illegally seized at defendant's apartment at 6122 Grimshaw, Pine Lawn, Missouri. It is undisputed that the officers had no search warrant at the time of the entry, that no emergency existed which would warrant a search without a warrant, and that the search was not incidental to a lawful arrest of the defendant.

The Government's sole justification of the seizure and its possession of the items obtained is that Summers, as well as the defendant, was a lawful resident and occupant of the apartment and that as such, he had a right to and in fact did voluntarily consent to the entry and the search. Summers, after a full explanation of his rights, voluntarily accompanied the officers to the apartment, opened the apartment door with a key in his possession, permitted the officers to enter and search the apartment, and handed over to the officers the evidentiary items in controversy. It is not disputed that Summers did in fact voluntarily consent to the search and seizure. The controversial issue is whether Summers had authority to admit the officers to

the apartment and to consent to the search.

The court held an evidentiary hearing, followed by a supplemental hearing, at defendant's request on the motion to suppress. Defendant did not personally testify at either hearing or at the trial. The trial court found as a fact that Summers was a lawful resident of the apartment and based upon such finding, determined Summers had a right to consent to the entry and search. The motion to suppress was denied. Additional evidence was introduced at the trial with respect to Summers' right to occupancy of the apartment. The motion to suppress was renewed and again denied upon the basis of Summers' right to share the use of the apartment with the defendant at the time of the entry and search.

■ The trial court's finding just stated is a finding of fact. We are bound by such finding unless it is shown to be clearly erroneous. See Drummond v. United States, 8 Cir., 350 F.2d 983, 988.

The apartment was initially rented by defendant. It is undisputed that Summers moved into the apartment with defendant in November 1966 and contributed to one month's rent, likely that of December. Rent for the apartment was $55 per month for single occupancy; $60 a month for double occupancy. On January 11, Summers delivered to the building custodian defendant's check for $60, which paid the rent of the apartment on a double occupancy basis to February 6. Summers testified that defendant told him he could stay in the apartment as long as he wanted to. At the time of the seizure, Summers' colored TV and some of his clothing were still in the apartment. He had retained possession of the key to the apartment. There is evidence that Summers was seen at the apartment on a number of occasions in January and that he returned to the apartment with defendant immediately after the attempted larceny. It would appear that Summers was out of work and that he had little money. He testified that the defendant used his colored TV and other items and that such use made up at least in part for the extra rent required by his presence.

■ Without discussing the evidence as to occupancy in further detail, we observe that there is no direct evidence and but little circumstantial evidence that would support an inference that Summers' right to occupancy of the apartment had been terminated prior to the search which occurred on February 3, 1967. Evidence that Summers may not have slept in the apartment every night and that he may have spent some time at his mother's home and that he used his mother's address as his permanent address falls far short of conclusively negativing Summers' right to use and occupy the apartment which he shared with the defendant. A careful examination of the entire record satisfies us that the court's determination that Summers was a resident of the apartment at the time of the search and seizure is supported by substantial evidence and has not been shown to be clearly erroneous.

■ This leads us to the critical legal issue which is whether a joint tenant or resident of an apartment has authority to consent to the entry and search thereof. This court and other courts have held that where there are multiple lawful residents of a premises, any one of such persons may give permission to enter and that if incriminating evidence is found, it may be used against all. In Drummond v. United States, supra, we cite supporting authorities and summarize the applicable law as follows:

"One having equal authority over premises may authorize a search of them. We have so held in Roberts v. United States, supra, pp. 896–897 of 332 F.2d [892 (8 Cir.),] and in Maxwell v. Stephens, supra, pp. 336–337 of 348 F.2d [325 (8 Cir.)]. See Burge v. United States, supra, p. 413 of 342 F.2d [408 (9 Cir.)]; Teasley v. United States, 292 F.2d 460, 464 (9 Cir. 1961); United States v. Sferas, 210 F.2d 69, 74 (7 Cir. 1954), cert. denied 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086." 350 F.2d 983, 989.

See also Friedman v. United States, 8 Cir., 381 F.2d 155, 158–159.

We adhere to the position taken in the cases just cited and hold that the officers entered the apartment and took the evidence sought to be suppressed with the voluntary consent of Summers and that Summers had a lawful right to occupy and use the apartment and permit others to enter it.

Defendant relies upon landlord and tenant cases such as Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828, and hotel clerk cases like Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856. Such cases are readily distinguishable from joint occupancy cases like our present case for the reasons pointed out in *Drummond,* supra, and Maxwell v. Stephens, 8 Cir., 348 F.2d 325, 336–338.

Defendant's contention that there can be no valid search without a warrant, absent an emergency situation, is refuted by United States v. Rabinowitz, 339 U.S. 56, 64, 66, 70 S.Ct. 430, 434, 435, 94 L.Ed. 653. In that case the Court, among other things, holds:

> "Assuming that the officers had time to procure a search warrant, were they bound to do so? We think not, because the search was otherwise reasonable, as previously concluded. * *

> "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable."

## II.

Summers was in jail as a result of his arrest on a charge of trying to illegally cash a payroll check at the time he told the officers of his involvement and that of the defendant in the offense here charged. Counsel for defendant developed such facts in cross-examining Summers. The record shows the following question and answer:

> "Q. And while you were in jail then is when you first told anybody about this St. Louis County Savings & Loan, isn't that right?

> "A. Yes. Lynn Wright gave me the check to go cash it."

Only the word "yes" in the foregoing answer was responsive to the question propounded by defendant's counsel. No motion was made to strike the balance of the answer, nor was any request made to instruct the jury to disregard it. Thus it seems clear that the defendant is responsible for the record showing that defendant participated in the check passing affair which brought about Summers' arrest and incarceration.

On redirect examination, the prosecutor asked the witness, "Who gave you that check?" Defendant's counsel objected to the question on the ground that it was not related to the offense for which the defendant was on trial. The court overruled the objection on the basis that defendant first brought the matter up. The witness then answered that defendant Wright had given him the check. Further examination by the prosecutor developed that defendant gave Summers the check in the apartment along with some identification material and that defendant agreed to give Summers some indefinite sum of money for passing the check. We are satisfied that the check charge has no relevancy whatsoever on intent or any other element of the crime here charged.

The general rule, subject to certain exceptions not here applicable, is that evidence of criminal offenses by the defendant other than the one for which he is on trial is inadmissible. Johnson v. United States, 8 Cir., 356 F.2d 680, 684; Kraft v. United States, 8 Cir., 238 F.2d 794, 801–802; Kempe v. United States, 8 Cir., 151 F.2d 680, 687.

We recognize that the scope of examination on matters opened up by opposing counsel with respect to collateral matters rests largely within the discretion of the trial court. See Davis v. United States, 8 Cir., 229 F.2d 181, 185–186. We can perceive of no legitimate or useful purpose that could be accomplished by admitting into evidence the testimony objected to and believe

that the objection should have been sustained.

██ Not every error occurring in the course of a trial requires a reversal. Rule 52(a), Fed.R. Crim.P., provides that errors which do not affect substantive rights shall be disregarded. If upon the record as a whole, the reviewing court is certain that the asserted error did not influence the jury or had but slight effect, the verdict and judgment shall stand. Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557; Atkinson v. United States, 8 Cir., 344 F.2d 97, 101; Homan v. United States, 8 Cir., 279 F.2d 767, 771; Davis v. United States, supra.

██ The Supreme Court in Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, holds that the harmless error rule may be applied to a violation of a defendant's constitutional rights if the court is able to declare a belief that the error was harmless beyond a reasonable doubt.

██ We are convinced that any error here committed in receiving the objectionable evidence is completely harmless. Defendant's own examination had already brought out Summers' view that defendant got him into the check trouble. The additional examination brings out no new relevant facts.

Defendant further contends that the error in receiving the testimony just discussed is aggravated by the italicized portion of the following instruction:

> "The defendant is not on trial for any act or conduct not alleged in the indictment. *The jury shall not use the evidence relating to the payroll checks for any purpose other than in determining the intent of the defendant. It may not be used to determine whether or not the defendant committed the acts alleged in the indictment.*"

Appropriate exception was made to the instruction. We are of the view that the italicized portion of the foregoing instruction should not have been given under the circumstances of this case. The evidence upon which the instruction is based was as we have heretofore determined improperly received. Additionally, we fail to see how evidence of intention to wrongfully pass a check can constitute any substantial evidentiary basis for a finding or inference that an intent existed to break into the bank for the purpose of committing larceny.

██ The vital fact issue in this case is whether defendant broke into the bank vault and knocked off some safe dials in an attempt to open the safe, as was testified to by Summers. If Summers' testimony is credited, as it obviously was as reflected by the jury verdict, it is our view that the jury would experience no difficulty in inferring that defendant's action was taken with a criminal intent to commit larceny. The jury in the challenged instruction was expressly told that they could not use the payroll check evidence in determining that the defendant committed the act charged in the indictment. A careful study of the entire record satisfies us that we can say with assurance that the testimony of Summers to the effect that defendant pushed him into the bad check passing incident and that the challenged instruction upon intent had no substantial effect upon the jury's verdict. Thus we determine that any error that may have been committed in such respects is not prejudicial.

The judgment is affirmed.