Robert W. DUPONT, Appellant,

v.

UNITED STATES, Appellee.

No. 4799.

District of Columbia Court of Appeals.

Argued April 28, 1969.

Decided Dec. 2, 1969.

John J. Hurley, Washington, D. C., appointed by this court, for appellant.

Sandor Frankel, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and John F. Rudy, II, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, FICKLING and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

Appellant was convicted under D.C.Code 1967, § 22–3214(a) for possession of a prohibited weapon, namely, a submachine gun. A sentence of 360 days was imposed, the execution of which was suspended. Appellant was released on personal recognizance and was confined by the military authorities as a deserter.

On the evening of January 31, 1967, at about 11:45 p. m., Officer Burton of the Metropolitan Police received information from an informant considered reliable that appellant was an army deserter, that he and some companions had gone to Virginia to purchase narcotics and planned to return to the Georgetown area, and that he was keeping a submachine gun in a bed in the Washington apartment of a female acquaintance. The officer was given a description of appellant and the girl with whom he was staying (said to be wearing an unusual purple cape), a description of the car, and the address of the apartment.

Armed with this information the officer enlisted the aid of Detective Sergeant Evanoff and others. The officers then went to Georgetown and arrested appellant at a parking lot adjacent to a cafeteria in the 1200 block of Wisconsin Avenue. After the arrest a large crowd gathered in the lot, which included persons recognized by Officer Burton as having frequented the girl's apartment. Detective Sergeant Evanoff recognized the girl in whose apartment the gun was said to be located from the description given him by Officer Burton, and approached her in the crowd.

There is some conflict between the testimony of Sergeant Evanoff and the girl as to what then transpired. Evanoff testified that he approached the girl and asked her if she knew appellant. When she replied that she knew him only as "Robbie" and that he was staying at her apartment, he told her that appellant was an army deserter and that he was keeping a submachine gun in her apartment. The girl denied a gun was there and offered to let Sergeant Evanoff "see for yourself." The two were then driven to the girl's apartment in a police cruiser. Before entering the apartment, Sergeant Evanoff told the girl that he only wanted to search the area in which appellant slept, and said she replied, "[I]f there is a damn machine gun in here, I want it out." Sergeant Evanoff proceeded directly to the bed in which the girl said appellant slept and recovered a modified .45 caliber submachine gun wrapped in a blanket on the bed.

The girl, on the other hand, testified that Detective Sergeant Evanoff approached her, verified her name and then told her to come with him, without asking consent for a search at that time. She said that she was refused permission to retrieve her coat from the cafeteria next door, but that a friend was sent to get it for her. Detective Sergeant Evanoff took her by the arm and led her to the squad car. She gave directions to her apartment, and was driven there by Evanoff and a uniformed officer. On the way, she said Evanoff told her that if the apartment were "clean" everything would "be all right", but that "if anything were there" she would "be in a lot of trouble." She said that there was no conversation concerning the gun until after the entry into the apartment and that her permission for a search was never asked before that time. She did admit having opened the street door and the apartment door and having shown the Sergeant the bed in which appellant slept. She said she was surprised when the machine gun was found. No part of the apartment was searched other than the bed in which appellant had secreted the gun.

Appellant moved to suppress the gun before trial. A hearing was held on the mo-

tion at which Detective Sergeant Evanoff, the girl and one of her companions on the night of the arrest testified. The motion was denied in a written opinion which treated as a factual question the issue whether the girl had given consent for a limited search of her apartment. After considering the conflicting testimony, the motions judge found that valid consent had in fact been given.

Appellant renewed the motion at trial and requested another full hearing on the search and purported consent. He proffered as additional witnesses two other officers who had been present at the time of the arrest and who had not testified at the pretrial hearing, but made no proffer of the testimony he expected the officers to give. A conflict in the trial testimony of policemen Evanoff and Burton was also alleged. The trial judge, ruling he was bound by the pretrial holding of consent, held a hearing on the motion limited to two issues, (a) whether appellant had sufficient proprietary interest in the apartment to render ineffective any consent by the girl to a search of the bed, and (b) whether there was an emergency situation which would justify a search without a warrant. He found that the girl had sole dominion over the apartment and could consent to the search, and that there was an emergency sufficient to sustain a warrantless search. Accordingly, the gun was admitted into evidence. ·

■ Appellant contends the gun was improperly admitted since the trial court erred in denying him a hearing de novo on the issue whether the girl gave her valid consent to the search. He offers Rouse v. United States, 123 U.S.App.D.C. 348, 359 F.2d 1014 (1966), as authority for the proposition that a pretrial ruling on a motion to suppress is not binding on the trial judge where matters occurring at trial cast reasonable doubt on that ruling, and claims his proffers of additional police testimony and the conflict in testimony between of-

ficers Evanoff and Burton met the criteria therein for a de novo hearing. *Rouse,* however, is distinguishable on its facts. There two officers gave incredibly conflicting and confusing testimony about crucial factors involved in the court's inquiry. Here the sole inconsistency was that Evanoff stated the informant gave only the block address of the apartment in question, while Burton testified that the exact address was given.[1] Furthermore, appellant at no time proffered the substance of any "new" evidence that would be offered by the additional officers he subpoenaed. Clearly there was no showing sufficient to warrant a de novo hearing.

■ Next, appellant argues that the pretrial ruling of valid consent was erroneous. Our review of the evidence adduced by the Government at the pretrial hearing leads us to conclude that it was sufficient to support the finding that a limited search of the apartment was conducted with the valid consent of the girl. The testimony of Detective Sergeant Evanoff "taken at full value, [met] the required standard" for consent. Judd v. United States, 89 U.S. App.D.C. 64, 67, 190 F.2d 649, 652 (1951). We find no reason to overturn the finding that consent was voluntary and freely given. *Compare* Maxwell v. Stephens, 348 F.2d 325, 336–337 (8th Cir.), cert. denied, 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965).

■ Finally, the trial court properly ruled the girl could effectively consent to the search of the bed where appellant had secreted the gun. While appellant had standing to challenge the legality of this search as a person "legitimately on [the] premises," Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), he cannot prevail on this objection. The consent of his host was directed to a part of the apartment not reserved for his sole

---

1. This went to the warrantless search question, which has no relevancy if a valid consent was given by the girl for the search.

personal use,[2] unlike the bureau in Reeves v. Warden, Md. Penitentiary, 346 F.2d 915, 924–926 (4th Cir. 1965), or the closet in Cunningham v. Heinze, 352 F.2d 1 (9th Cir. 1965). Moreover, since the search in question was confined to a room of joint use, the rule we follow is that: "[W]here there are multiple lawful residents of a premises, any one of such persons may give permission to enter and * * * if incriminating evidence is found, it may be used against all." Wright v. United States, 389 F.2d 996, 998 (8th Cir. 1968).[3]

This conviction must be reversed, however, because of the admission into evidence of certain custodial statements of appellant which violated the *Miranda* rule.[4]

After his arrest, appellant was taken to the precinct by Officer Burton [5] where he attempted to direct appellant's attention to a large card on the wall which set forth the "rights of an arrested person." [6] The officer did not in any way orally communicate the warnings contained on the card. Appellant indicated no interest in the card and did not look at it. Thereafter, sometime between 2:00 and 2:30 a. m., Detective Sergeant Evanoff returned to the police station accompanied by the girl and carrying the submachine gun. He confronted appellant and immediately told him that he was under arrest for possession of a prohibited weapon. Evanoff then began to give appellant an oral warning of his rights, at the same time indicating the wall chart. Appellant cut him off somewhere in his first sentence beginning, "anything you say", saying "I know my rights, man" and that Sergeant Evanoff didn't have to go

into that. Appellant did not look at the chart on the wall at this time, either.

After this exchange, appellant told the officer that the gun was entirely his, thus incriminating himself, and that the girl knew nothing about it. In response to questions by Detective Sergeant Evanoff about where the gun came from, appellant said he had found it in an abandoned car in Fairfax. Appellant then said he wanted to call his lawyer, claiming the right to make "a phone call" after Evanoff replied, "All right, very shortly." As appellant was talking on the phone, Evanoff asked to whom he was talking and was handed a card with the name of an Air Force colonel on it, who appellant said was his lawyer. When appellant had completed the call, the questioning continued and appellant made further inculpatory statements.

The trial court denied appellant's motions to suppress the in-custody statements, finding that he either waived his *Miranda* rights or waived his right to be informed of them.

Under *Miranda,* prior to any questioning the accused must be warned (1) that he has the right to remain silent, (2) that anything said can be used against him in court, (3) that he has the right to consult with and to have counsel present at the interrogation, and (4) that if he cannot afford one a lawyer will be provided for him.[7]

 While there is some evidence that the officers attempted to advise appellant of his rights and that appellant knew these rights, we need not reach the question of whether this evidence was sufficient to es-

---

2. There was testimony to the effect that the beds and mattresses, in the apartment were used by the girl's friends on a "first-come, first-serve" basis.

3. Since we have concluded that the search was lawful based on consent, we do not reach the question whether the circumstances constituted such an emergency as to justify a warrantless search.

4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. The record indicates that appellant was then under arrest for a violation of the narcotics laws.

6. This wall chart is an enlargement of the standard PD 47 rights card which contains a statement of *Miranda* rights. The print is in ½ inch block lettering. Several of these charts were posted on the walls of the precinct.

7. Miranda v. Arizona, 384 U.S. at 468–473, 86 S.Ct. 1602.

tablish that the police actually met the requirements placed upon them by *Miranda* to inform him of his rights. Where, as here, an interrogation is conducted without the presence of counsel "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived * * *" the right to have retained or appointed counsel present when he was interrogated. *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. 1602, at 1628. There was no showing sufficient to meet this requirement.

In Walker v. United States, D.C.App., 250 A.2d 553 (1969), the defendant was advised substantially of his *Miranda* rights, stated "he knew all about them" and, upon interrogation, made an incriminating statement to the police shortly thereafter. This court held that since under *Miranda* there was a failure of the required proof that appellant had been offered counsel and had *rejected* the offer, the remark of the defendant and his subsequent statement to the police were insufficient to constitute a waiver of the right. 250 A.2d at 554–555. *See also* Brown v. Heyd, 277 F.Supp. 899, 903–905 (E.D.La.1967), aff'd per curiam, 406 F.2d 346 (5th Cir. 1969).[8]

It is clear from the record in this case that the Government has not carried the required "heavy burden" of demonstrating that appellant "knowingly and intelligently" waived his right to have counsel present when he was interrogated. Consequently, it was prejudicial error to deny appellant's motions to suppress the in-custody statements.

While we find it unnecessary to do so the dissenting opinion reaches the question of whether the evidence was sufficient to establish that appellant was informed of his *Miranda* rights. We might say in passing that, if we understand them correctly, we agree with most of the fundamental propositions stated in the dissent. That is to say, we agree that when an officer makes a "good faith effort" to inform an arrested person of his *Miranda* rights and the person refuses to listen he has no standing to complain he was not informed of his rights; that the officer need not attempt to "force" him to listen; and that when a person is informed of his rights and actually indicates no desire to avail himself of the rights, a waiver occurs.[9] Upon the basis of this court's prior decision in Walker v. United States, *supra,* however, we do differ with the dissent's conclusion that a waiver of his right to counsel was established here.

In view of the full *Miranda* hearing held by the trial court and because of our disposition of the case, we see no purpose in adopting the Government's alternative position that the case should be remanded for a finding as to whether appellant was warned of his rights.

Reversed and remanded for a new trial.

HOOD, Chief Judge (dissenting):

I dissent from that portion of the opinion dealing with appellant's *Miranda* rights. As the opinion points out, Officer Burton called appellant's attention to a large card on the wall setting forth a statement of his rights, as an arrested person, under *Miranda.* Appellant indicated no interest and would not even look at the card. Later when Detective Evanoff began to read to appellant his rights under *Miranda,* and at the same time attempted to direct appellant's attention to the card on the wall, appellant cut him off, saying he knew his rights and refused to look at the card. I think *Miranda* must be interpreted in a realistic and reasonable manner, and that the officers did all that reasonable men could do.

---

8. In that case, the court stated:

It will not do to suggest that [the defendant's] statement, "I know all of that, [officer]," constitutes a waiver of the right to the warning that [the defendant] was not given. * * * [*Miranda*] clearly holds that the right to counsel may be waived only if the individual "knowingly and intelligently" does so "after such warnings have been given." (citations omitted) 277 F.Supp. at 905.

9. It might eventuate that we would construe some factual situations differently.

What more could the officers have done? Should they have attempted to force appellant to read or to listen? Should the detective have continued to read when it was obvious that appellant was not listening?

It is my opinion that when officers make a good faith effort to inform an arrested person of his *Miranda* rights and that person refuses to pay any attention to the officers, such person has no standing to complain that he was not informed of his rights.

It is also my opinion that when an arrested person is informed of his rights and indicates no desire to take advantage of any of those rights, the trial court may find, as it did here, that such person knowingly and intelligently waived those rights. If there is substantial evidence in the record to support that finding it should stand, and I think that is the situation here. I believe my position is supported by the recent decision in United States v. McNeil, U.S.App. D.C. (decided October 31, 1969).

I would affirm the conviction.