Brenda THOMAS, Appellant,

v.

UNITED STATES, Appellee.

No. 9193.

District of Columbia Court of Appeals.

Argued Nov. 18, 1975.

Decided Feb. 3, 1976.

Rehearing and Rehearing en Banc
Denied April 20, 1976.

Richard S. Greenlee, Washington, D. C., appointed by the court, for appellant. Frederick H. Weisberg, Washington, D. C., appointed by the court, also entered an appearance for appellant.

William M. Brodsky, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty. and John A. Terry and Roberta T. Eaton, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, YEAGLEY and MACK, Associate Judges.

KERN, Associate Judge:

Appellant was charged in an indictment with first-degree burglary and robbery and was found guilty of burglary by a jury on September 18, 1974.[1] This appeal urged reversal of that conviction on the grounds that (1) appellant's oral statements to a

1. The robbery count was dismissed at the close of the government's case.

police officer should have been suppressed since there is no evidence that appellant knowingly and intelligently waived her *Miranda* rights [2] and (2) appellant's subsequent written statement should have been suppressed since it was the product of the earlier oral statement.

On a May evening Elizabeth Alexander allegedly was robbed in her apartment at 716 11th St., N.W. John Brevard, who lived in the same apartment, notified police of the incident, but no report could be taken due to the intoxication or excitement of the victims. The next morning Detective Curry interviewed Alexander and Brevard and they indicated that appellant and her husband, who lived nearby, had been the perpetrators of the robbery and burglary.

Detective Curry spoke with appellant in her house but she denied knowledge of the crimes. Curry then left appellant and again interviewed Ms. Alexander and Mr. Brevard, who reasserted that appellant had been involved in the offense. Curry returned to appellant's house, read her the *Miranda* warnings,[3] and, without obtaining from her a written waiver of these rights, again questioned appellant about the incident.

While they were talking, appellant's husband called on the telephone and Curry spoke to him, ultimately suggesting that he come to the police station for questioning. Before Detective Curry left, however, Mr. Thomas arrived at his home, and Curry read the *Miranda* rights card to both of them. All three continued to discuss the incident for 15 to 30 minutes, and at some point Detective Curry ceased asking questions and the appellant and her husband "broke down and told [him] the whole story." Just prior to their confession of participation in the crime the officer reiterated his warning, saying, "Now, you have already had your rights, you know, but go ahead and tell me."

Appellant's admission was reduced to writing at the police station approximately one hour later. The record reflects that before this statement was transcribed she was read her rights and she answered the questions on the back of the card, thus expressly and affirmatively stating that she understood her rights and was willing to answer questions without a lawyer.

Appellant's argument stems from the proposition that if a statement is taken from a defendant after *Miranda* warnings have been given but without an attorney present, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); *see Escobedo v. Illinois,* 378 U.S. 478, 490 n.14, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); *Hill v. Whealon,* 490 F.2d 629, 632, 635 (6th Cir. 1974); *United States v. Guzman-Guzman,* 488 F.2d 965, 966–67 (5th Cir. 1974). Appellant argues that the government here has failed in its burden of showing a knowing and intelligent waiver of rights.[4] Appellant emphasizes particu-

---

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Detective Curry testified that he read appellant the warnings from a printed card, standard form PD 47, including the statement that she had a right to an attorney and that she did not have to answer questions without an attorney present. However, the Detective did not ask her the questions on the back of the card concerning whether she was willing to answer questions without a lawyer present, nor did he have her write out responses to those questions. He testified that he did ask

appellant if she understood these rights, saying:

Okay, Brenda Thomas, you know that you don't have to tell me anything; but if you know anything, you know, I would like to know about it.

4. Appellant concedes that the purported waiver was "voluntary" in the traditional sense, *viz.,* looking at the totality of the circumstances it was not the product of coercion or duress. *See Jackson v. Denno,* 378 U.S. 368, 390–91, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Chambers v. Florida,* 309 U.S. 227, 60 S.Ct.

larly Detective Curry's failure (1) to ask her whether she was willing to answer questions without an attorney being present and (2) to have her respond *in writing* to the questions on the back of the PD 47 Form.

We view the absence of a written waiver of *Miranda* rights as not dispositive of the waiver issue. We note that the District of Columbia Circuit Court of Appeals has held that a defendant's refusal to execute a written waiver of rights form does *not* preclude a finding of waiver. *United States v. Cooper,* 163 U.S.App.D.C. 55, 499 F.2d 1060 (1974). As to the detective's failure expressly to ask appellant whether she wished to proceed to answer his questions without a lawyer, the record, as detailed above, reflects that he emphasized to her her rights and that she responded orally.

■ This court in *Rosser v. United States,* D.C.App., 313 A.2d 876, 878 (1974), discussed the factors relevant in determining whether a valid waiver occurred:

[T]he court should consider such factors as the individual's prior experience with the legal system, the circumstances of the questioning, any allegation of coer-

cion or trickery resulting in a confession, and any delay between arrest and confession. [Footnotes omitted.]

■ In the instant case, there is no evidence that appellant had prior experience with the legal system, but there is also no evidence of coercion or deception in obtaining the statement or of any delay after arrest occasioning the confession. As to the circumstances of the questioning, appellant was at home in her living room in the middle of the afternoon, her husband was with her, and only one police officer was present. The officer *twice* read her the complete set of *Miranda* warnings from the PD 47 form, and *several times* reminded her that she did not have to say anything. Finally, appellant's confession came not in response to a question by the officer but as an independent statement made after a pause in their discussion of the incident. Under these particular circumstances, appellant's decision to tell the officer what happened can only be interpreted as a knowing and intelligent waiver of her Fifth and Sixth Amendment rights,[5] since it constituted as "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).[6]

472, 84 L.Ed. 716 (1940); *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). In denying appellant's motion to suppress the confession the trial court also concluded that the waiver and the statement both were made voluntarily.

Neither appellant nor the government discusses the applicability of 18 U.S.C. § 3501 (1970), but we conclude that any statement admissible under the standards required in *Miranda v. Arizona, supra,* would also meet the standards of § 3501. Section 3501(b) lists the following factors to consider in determining voluntariness:

(1) The time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required

to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

5. A waiver of constitutional rights need not be expressed, but may be implied from the actions of appellant or the circumstances of a particular case. *See United States v. Moreno-Lopez,* 466 F.2d 1205 (9th Cir. 1972); *United States v. Hilliker,* 436 F.2d 101 (9th Cir. 1972).

6. Appellant's reliance on *Dupont v. United States,* D.C.App., 259 A.2d 355 (1969) and *Walker v. United States,* D.C.App., 250 A.2d 553 (1969) is misplaced. In *Dupont* appellant was never orally warned of his rights and ignored a PD 47 card on which the warnings were printed. This was an insufficient

**502**

We conclude that the trial court's decision that appellant's statements were admissible does not lack "substantial support in the evidence." *United States v. McNeil,* 140 U.S.App.D.C. 3, 6, 433 F.2d 1109, 1112 (1969).'

Accordingly, the judgment is

*Affirmed.*[7]

foundation on which to base a finding of a knowing waiver. *Dupont v. United States, supra* at 358–59. In *Walker* appellant was orally warned of his rights, but the card from which the officer read these rights did not contain a statement informing appellant that anything he said could be used against him. Because the warnings were incomplete we found a violation of *Miranda. Walker v. United States, supra* at 554.

In both cases we indicated that the government did not carry its burden of showing that appellants were offered counsel and rejected

it. In contrast, in the instant case we concluded that the testimony concerning the statements of the officer immediately before appellant's confession constitutes an adequate showing of implied waiver.

7. We need not reach appellant's second argument, that the written statement must be excluded since it was a product of the prior oral statement, since we find that the oral statement was not obtained in violation of *Miranda.*