HOKE, J., concurs in result. CONNOR, J., dissenting. WALKER, J., concurs in dissenting opinion.
From a judgment upon a special verdict of not guilty the State appealed.
The facts are sufficiently stated in the opinion of the Court.
Chapter 213, Laws 1905, reads as follows:
"SECTION 1. That all within the boundary known as the `Qualla boundary' of the Cherokee Indian lands, in Jackson and Swain counties, *Page 320 
in which is located the Government Indian School, at Cherokee, N.C. be and the same is hereby constituted a special school district.
"SEC. 2. That all children within said boundary are hereby compelled to attend school at least nine months in each calendar year, between the ages of 7 and 17 years: Provided, the Government of the (442) United States shall furnish such school with all proper facilities, together with board, clothing, books, medicine, medical attendance, and other necessary expenses: Provided further, that nothing in this act shall compel any sick or otherwise disabled child, or any child who is sole person or necessary for the care or waiting on of any sick parent, or for other legal or lawful excuse, to attend said school: Provided further, that nothing in this act shall prevent the proper school authorities from excusing any child from the provisions of this act when in their judgment they deem it necessary: Provided further, that this act shall not apply to children in said boundary attending some other school for a like time and period.
"SEC. 3. That it shall be unlawful for any parent or guardian to withhold any child from school, and upon conviction shall be fined or imprisoned, at the discretion of the court.
"SEC. 4. That the proper authorities of said schools shall have authority to take charge of any of said children of said district wherever found, and place and keep them in said schools for the period above expressed: Provided, that nothing in this act shall allow any person to mistreat or abuse said child or children, or use any more force than is necessary to carry this act into force and effect.
"SEC. 5. That nothing in this act shall apply to any child, parent, or guardian with less than one-eighth Indian blood."
The defendant was indicted for violation of this act, and the jury returned the following special verdict:
"We find that, at the commencement of this action and for a year prior thereto, there was a school maintained by the Government of the United States within the Qualla boundary, furnished with all the proper facilities, together with board, clothing, books, medicine, medical attendance, and other necessary expenses. That the defendant was the father of a child between the ages of 7 and 17. That he did not (443) send said child to the said school for nine months during the last school year. That said child is more than one-eighth Indian blood. That said child was not sick, disabled, or necessary for the care or waiting upon of any sick parent. That said child was not in attendance on any other school for a period of nine months during said school year, nor was said child excused from attendance by the proper school authorities. That said defendant resided within the Qualla boundary. That the said school is under the entire control of the United States, and *Page 321 
the said school is in no way under the control or management of the board of education or school committee, or taught by any teacher under employment of the State. If, upon this special verdict, the court be of the opinion that the defendant is guilty, then we, the jury, find him guilty; but if the court be of the opinion that he be not guilty, then we find him not guilty."
The defense seems to rest its case upon three propositions: 1. The defendant is not a citizen of the State, and hence the act is beyond the power of the State Legislature. 2. That the act applies only to Indians, and hence is class legislation and unconstitutional. 3. It is unconstitutional to select out one school district or locality and make education compulsory therein, without applying the same regulation to the rest of the State.
The Constitution (Art. IX, sec. 15) provides: "The General Assembly is hereby empowered to enact that every child of sufficient mental and physical ability shall attend the public schools during the period between the ages of 6 and 18 years, for a term of not less than sixteen months, unless educated by other means." The authority is as to "every child" between the ages of 6 and 18, and embraces Indians, as well as whites and blacks. We have long had legislation for separate schools for the Croatans in Robeson. In S. v. Ta-cha-na-tah, 64 N.C. 614, it was held that the Cherokee Indians resident in this State are subject to our criminal law, the Court saying: "Prima facie, all persons within the State are subject to its criminal law and (444) within the jurisdiction of this Court. If any exception exists, it must be shown. Upon examination of the treaty of New Echotah, Georgia, on 29 December, 1835, between the United States and the Cherokee Indians, we find that, by Article XII, it was provided that individuals and families who were averse to moving west of the Mississippi River might remain and become citizens of the States where they resided. . . . Unless expressly excepted, our laws apply equally to all persons, irrespective of race."
In Cherokee Nation v. Georgia, 5 Pet., 1, and Worcester v. Georgia, 6 Pet., 515, it is held: "It is the universal doctrine of the public law that the Indians are the domestic subjects of the particular European or American State in which they may happen to be." There are bands of Indians still surviving in New York, Georgia, Wisconsin, and in many other States, and the decisions on this point are summed up and reviewed in S. v.Doxtater, 47 Wis. 278. These decisions show that Indians are subject to the general laws of the State, unless specially excepted, and that they are usually excepted in laws as to taxation and game laws, but not in this State. In this case the General Assembly did not exempt Indians, but specially provided for the application of *Page 322 
this law to them in this district. In re Cherokee Trust Funds, 117 U.S. 309
(bottom of page), it is said of the Cherokees in North Carolina: "They are citizens of that State and bound by its laws."
The second objection, that this is class legislation and unconstitutional, is equally untenable, as is also the third objection, that it applies to only one locality or district. The Constitution does provide (Art. IX, sec. 2): "The children of the white race and the children of the colored race shall be taught in separate public schools, but there shall be no discrimination in favor of or to the prejudice of either." The white and colored races compose the bulk of the people of this (445) State, and the object of this provision is plain, but it is clear that this special act in regard to the Indians of the Qualla School District is "no discrimination in favor of or to the prejudice of either" the white or colored race. And it is also well settled that the Legislature can meet the needs of one county, district, or locality without making the same apply to the whole State. This was held as to the sale of intoxicating liquor (S. v. Joyner, 81 N.C. 534; S. v. Stovall, 103 N.C. 416; S. v.Barringer, 110 N.C. 525; S. v. Snow, 117 N.C. 774); restricting sale of seed cotton in certain localities (S. v. Moore, 104 N.C. 714); as to no-fence laws (Broadfoot v. Fayetteville, 121 N.C. 418); as to mode of working public roads (Tate v. Comrs., 122 N.C. 812); and there are other instances (Intendant v. Sorrell, 46 N.C. 49, and many cases cited; S. v.Sharp, 125 N.C. 632, 633). That the Legislature may provide special regulations for a particular school district, as where, for instance, the district furnishes by its own action funds in addition to the public school funds, is held in McCormac v. Comrs., 90 N.C. 441. And the same must be true if the funds come from private donation or the General Government, if the State accepts such maintenance for "a public school district."
The act is not discriminative, because it applies alike to all Indians in that school district. It could not apply to other races, which go to their own race schools. It is not objected (indeed, could not be by this defendant) that other races are unduly taxed for the benefit of one race, as in Lowery v. School Trustees, 140 N.C. 33, for the school is supported, not by taxation, but by donations from the General Government.
It has been suggested that, the school being supported and maintained by the Federal Government, the State could not compel the defendant to send his child there. The point does not arise, for the act, while creating the district a "special school district," as is also the case with (446) graded schools supported in whole or part by other than State and county funds, the requiring the Indians within that district to send their children between 7 and 17 to school, provided the United States Government furnishes "all proper facilities, together with board, *Page 323 
clothing, books, medicine, medical attendance, and other necessary expenses," does not require them, specifically, to send the children to the Government School, but specifically says that they may send their children to any "other school for a like time and period." There are exemptions of sick or disabled children, or those waiting on sick parents or having other lawful excuse, or whom the school authorities may see fit to excuse. The law compels attendance on some school, but not on this school, leaving the defendant full choice.
The purview of the act is clear, reasonable and within the scope of the lawmaking power of the State. The Federal Government has established a school for the Indians in the "Qualla boundary," and defrays all expenses, including not only education, but books, board, clothing, medicine, medical attendance and other necessary expenses. The United States Government cannot compel the attendance of the children. The State Legislature makes the "Qualla boundary" a special school district, and, reciting the above facilities afforded by a school established therein, requires (section 2) the Indian children in that boundary "to attend school at least nine months" in each year, without designating this school, and, to avoid such conclusion, provides that the children may comply with the act by attending some other school. The defendant did not send his child to any school.
Upon the special verdict the judge should have held the defendant guilty. The judgment is reversed. The case is remanded for proper judgment to be entered on the verdict and that the sentence of the court may be imposed.
Reversed.
HOKE, J., concurs in result.