STATE v. L. F. McALHANEY, ARTHUR WORLEY, BARNEY RENTZ, JACK JAMES, AND DAN HITCHCOCK.

(Filed 19 November, 1941.)

1. **States § 1: Indians § 1—**

   As a result of the Treaty of Peace with England the territory embraced within the thirteen states, together with land not previously granted, passed to these States subject to the possessory rights of the Indians over the land which they occupied.

2. **Indians § 1—**

   Notwithstanding the guardianship relation existing between the Federal Government and the Indians, Indians residing in North Carolina are citizens of this State and remain subject to its laws.

3. **Indians § 4: Courts § 9—**

   Our courts have jurisdiction of a prosecution of a white man for assault upon an Indian committed upon an Indian reservation, which jurisdiction is not ousted by the enactment of sec. 213, Title 25, U. S. C. A., since the Federal Act does not give the Federal Government exclusive jurisdiction, and could not interfere with the exercise of the police powers of the State.

APPEAL by defendant from *Bobbitt, J.,* at July Term, 1941, of SWAIN. No error.

Criminal prosecution under bill of indictment which charges that the defendant McAlhaney *et al.* did unlawfully, willfully and feloniously: (1) conspire to kidnap one Tom King; (2) kidnap one Tom King; (3) conspire to commit a felonious assault upon one Tom King; and (4) commit a felonious assault as defined in C. S., 4214, upon one Tom King.

When the cause came on for trial, at the conclusion of the evidence, it appearing that defendant McAlhaney is a white person and Tom King,

the party alleged to have been kidnaped and assaulted, is an Indian, and that the alleged assault occurred within the bounds of the Cherokee Indian Reservation, the defendant prayed the court to charge the jury as follows:

"The court charges the jury that, even though it should find beyond a reasonable doubt that the defendants, or any of them, committed the acts alleged in the bill of indictment, yet if the jury should further find that said acts were committed on the lands embraced in what is known as the Cherokee Indian Reservation and should further find that the person, namely Tom King, upon whom the assault was alleged to have been made and who was alleged to have been kidnaped and against whom the conspiracies were alleged to have been entered into, was a Cherokee Indian and a member of the Indian Band located on said Reservation, then the court charges you that this court would not have jurisdiction of the offenses, and you should, therefore, return a verdict of not guilty as to all the defendants." The court declined to give the prayer as requested and defendant McAlhaney excepted.

The jury returned a verdict of "Not Guilty" upon the first, second, and third counts, and upon the fourth count "Guilty of an assault, causing serious damage." From judgment upon the verdict the defendant McAlhaney appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*Jones, Ward & Jones and Baxter Jones for L. F. McAlhaney, appellant.*

BARNHILL, J. The defendant relies solely upon his exceptive assignment of error based on the refusal of the court to instruct the jury as prayed. In so doing he concedes that, ordinarily, the criminal laws of the State are applicable to offenses committed within the Indian Reservation. *S. v. Adams,* 213 N. C., 243, 195 S. E., 822. He contends, however, that the Federal Government, by the enactment of sec. 213, Title 25, U. S. C. A., has assumed jurisdiction of all felonious assaults committed by white persons upon Indians within the Indian country and that this jurisdiction once assumed is exclusive, depriving the State courts of any jurisdiction to try white persons charged with a felonious assault within the Cherokee Reservation. This contention cannot be sustained.

After the colonies had achieved independence the thirteen states which then came into being succeeded under the Treaty of Peace to the rights of England in this territory. The result of this was that the sovereignty of the territory embraced within the several states, together with the

land not previously granted, passed to these States subject to the possessory rights of the Indians over the land which they occupied. *Fletcher v. Peck,* 6 Cranch, 87, 3 L. Ed., 162; *Worcester v. Georgia,* 6 Pet., 515, 8 L. Ed., 483; *Eu-che-lah v. Welsh,* 10 N. C., 155; *United States v. Wright,* 53 Fed. (2d), 300; *Eu-che-lah v. Welsh,.supra.*

While the Federal Government has supervised their contracts, educated their children and made generous provisions for their support under the guardianship relation existing between the Federal Government and the Indians they remain subject to the laws of North Carolina.

"They (the Cherokee Indians in North Carolina) are citizens of that State and bound by its laws." *Eastern Cherokee Indians v. United States,* 117 U. S., 288, 29 L. Ed., 880; *Cherokee Nation v. Georgia,* 5 Pet., 1; *Worcester v. Georgia, supra; United States v. Boyd,* 68 Fed., 577; *United States v. Swain County,* 46 Fed. (2d), 99.

Unless expressly excepted, our laws apply equally to all persons, irrespective of race, and all persons within the State are subject to its criminal laws and are within the jurisdiction of its courts. Particularly is this so as to citizens of the State. *S. v. Ta-cha-na-tah,* 64 N. C., 614; *S. v. Wolf,* 145 N. C., 441; *Eastern Cherokee Indians v. United States, supra; United States v. Wright, supra; S. v. Adams, supra; Utah Power & Light Co. v. United States,* 243 U. S., 389, 61 L. Ed., 791; *United States v. McBratney,* 104 U. S., 621.

The fact that the eastern band of Indians had surrendered the right to their tribal land, had separated themselves from their tribe and had become subject to the laws of the State of North Carolina did not destroy the right or the duty of the guardianship on the part of the Federal Government. This right of guardianship, however, relates primarily to property rights and economic welfare. *United States v. Wright, supra.*

Criminal statutes relating to Indians, enacted by The Congress in furtherance of the guardianship relation the Federal Government undertakes to maintain towards Indians, are not exclusive. "Clearly no Act of Congress in their behalf would be valid which interfered with the exercise of the police powers of the State. In such a situation a law to be sustained must have relation to the purpose for which the Federal Government exercises guardianship and protection over a people subject to the laws of one of the. States, *i.e.,* it must have reasonable relation to their economic welfare." *United States v. Wright, supra.*

We conclude, therefore, that the enactment by The Congress of U. S. C. A., Title 25, sec. 213, was not the exercise of a power vested exclusively in the Federal Government and creates no such conflict as would oust the jurisdiction of the State courts.

In the trial below we find

No error.