**In the Matter of the Imprisonment of
Frank Joseph McCOY.
Civ. No. 1547.**

United States District Court
E. D. North Carolina,
Raleigh Division.
Sept. 4, 1964.

John A. Dwyer, Whiteville, N. C., for petitioner.

T. Wade Bruton, Atty. Gen. of North Carolina, by Theodore C. Brown, Jr., Staff Atty., Raleigh, N. C., for respondent.

LARKINS, District Judge.

## SUMMARY

Pursuant to the provisions of Title 28 U.S.C.A. § 2254, counsel for this state prisoner filed this petition for a writ of habeas corpus. Issues were joined upon submission of respondent's answer and motion to dismiss. Noting the existence of a substantial constitutional question, the court entered an Order to Show Cause returnable to the Jones County Courthouse at Trenton, North Carolina,

on May 21, 1964 at 10:00 a. m. After the hearing the petition was taken under advisement by the court pending receipt of affidavits and memoranda of law.

The petitioner contests the legality of his incarceration by the respondent and contends that his detention is violative of the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. He maintains that at the time he was tried and convicted for the offenses of arson and felonious breaking and entering, the Superior Court of Swain County was without jurisdiction because both crimes were committed on the Cherokee Indian Reservation at the time petitioner was an enrolled, unemancipated member of the Eastern Band of Cherokee Indians. He alleges that jurisdiction over his person and these crimes exists exclusively in the federal court.

### FINDINGS OF FACT

The petitioner, along with a co-defendant, was charged with breaking and entering a grocery store and setting fire to it and burning it on November 29, 1959. The store was located in a place called Birdtown, which is on the Cherokee Indian Reservation. The building was owned by Mrs. Myrtle Jenkins, a Cherokee Indian.

At the March 1960 Term of the Superior Court of Swain County the petitioner appeared personally, and through counsel of his own choice, entered pleas of guilty to a two-count Bill of Indictment charging him with arson in the second count and felonious breaking and entering in the first. He was sentenced to a term of ten (10) years in the State's prison on the arson charge and was given a term of not less than seven (7) nor more than ten (10) years for the offense of felonious breaking and entering. Service of this latter sentence was to commence at the expiration of the sentence imposed for arson. No appeal was taken from these judgments.

The petitioner was born at Cherokee, North Carolina on May 10, 1941, and was enrolled as a member of the Eastern Band of Cherokee Indians. His enrollment number is 1730. On November 29, 1959 he was an enrolled, unemancipated member of the Eastern Band of Cherokee Indians.

On October 28, 1963 the applicant raised the question of the legality of his imprisonment by a petition for a writ of habeas corpus in the Superior Court of Nash County. That court granted a hearing and thereafter denied the petition. The petitioner, through his attorney, excepted to the court's findings and ruling and applied to the Supreme Court of North Carolina for a writ of certiorari. On February 4, 1964 the petition was denied without opinion. The petitioner forewent exhaustion of other available state remedies and filed his application in this court for consideration.

### CONCLUSIONS OF LAW

Opposition to this application is voiced by the respondent in its motion to dismiss. It appeals to the court to grant the motion because (1) the applicant has failed to exhaust his available state remedies as required by Section 2254, and (2) the United States Government does not possess exclusive jurisdiction over criminal acts committed by an Indian on the Cherokee Indian Reservation, even though the act is committed against another Indian.

In considering the question of the exhaustion of state remedies, it should be noted that in recent years the federal courts have construed the doctrines as codified in Title 28 U.S.C.A. § 2254 with liberality. No longer is the applicant obligated to seek other remedies available to him within the state once he has presented his contention to the highest state court and has had denied there the relief sought. Thomas v. Cunningham, 313 F.2d 934 (4th Cir. 1963); Hunt v. Warden; Bristow v. Pepersack; Cox v. Pepersack, 335 F.2d 936 (4th Cir. 1964). In United States ex rel. Frinks v. Barwick, 331 F.2d 597 (4th Cir. 1964), the petitioner was jailed after having his suspended sentence re-

voked in the state court. The sole state remedy he utilized was an application for writ of certiorari and supersedeas in the Supreme Court of North Carolina. The application was denied and, without further effort, he filed a petition for writ of habeas corpus in this court. The district court denied the petition after finding that the available state remedies had not been exhausted. On appeal the circuit court remanded the case with this decision:

> "We hold that the petitioner, having theretofore squarely presented to the Supreme Court of North Carolina his contention that he was denied counsel in the revocation proceeding, and having been denied relief in that court, he is not further obliged to pursue alternate procedures for relief in the state courts. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960). * * * "

■ This holding applies to the case at hand for the question here has been presented to the Supreme Court of North Carolina by an application for a writ of certiorari which was denied. This stands true despite the fact that the granting or denying of a petition for writ of certiorari is a matter solely within the discretion of the high court and that in making application for the writ failure to comply strictly with the regulations contained in North Carolina Supreme Court Rule 34 will result in a dismissal thereof. See N.C.Gen.Stat. 1–269 and annotations.

■ The applicant is precluded from seeking a post-conviction hearing in North Carolina when there has been a prior adjudication of the constitutional question by any court of competent jurisdiction. N.C.Gen.Stat. 15–217. Here the petitioner has had his claim adjudicated in a habeas corpus proceeding in the state court, to seek post-conviction relief would only end in a summary dismissal.

■ Petition for writ of certiorari to the Supreme Court of the United States is no longer necessary since the decision of Fay v. Noia, supra, overruled Darr v. Burford, 1949, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761, to the extent that it barred a state prisoner from federal habeas relief if he had failed timely to seek certiorari in the Supreme Court of the United States from an adverse state decision. Thus, the applicant before the court has exhausted his available state remedies in full compliance with the provisions of Section 2254 and his petition is properly before this court.

■ Since the treaty of New Echota of 1835, 7 Stat. 478, the State of North Carolina has exercised jurisdiction over criminal offenses committed by Indiana on the Cherokee Indian Reservation in Swain County, North Carolina. The United States Government, in its role and relation as guardian of these wards, has exercised concurrent jurisdiction in this area, but never has it exercised exclusive jurisdiction. State v. Ta-Cha-Na-Tah, 64 N.C. 614 (1870); State v. McAlhaney, 220 N.C. 387, 17 S.E.2d 352 (1941). In Eastern Band of Cherokee Indians v. United States, 1886, 117 U.S. 288, 309, 6 S.Ct. 718, 29 L.Ed. 880, the Court made this observation:

> "The Cherokees in North Carolina dissolved their connection with their nation when they refused to accompany the body of it on its removal, and they have had no separate political organization since. Whatever union they have had among themselves has been merely a social or business one. It was formed in 1868, at the suggestion of an officer of the Indian office, for the purpose of enabling them to transact business with the government with greater convenience. Although its articles are drawn in the form of a constitution for a separate civil government, they have never been recognized as a separate nation by the United States; no treaty has been made with them; they can pass no

laws; they are citizens of that state, and bound by its laws. * * * "

The petitioner asserts his claim as coming within the provisions of Title 18 U.S.C.A. §§ 1151 and 1153. The former section reads as follows:

"Except as otherwise provided in sections 1154 and 1156 of this title, the term 'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."

The following is Section 1153:

"Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, rape, incest, assault with intent to kill, assault with a dangerous weapon, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

The applicant strongly urges that the Cherokee Indian Reservation falls within the Section 1151 definition of "Indian country" but this view cannot prevail. To understand more fully the anomalous status of the Cherokee Indians in North Carolina requires a brief résumé of the history involved.

Before the discovery of America the Cherokee Nation inhabited lands now encompassed by the states of North Carolina, South Carolina, Georgia, Alabama and Tennessee. When England asserted sovereignty over this territory she recognized the right of the Indians to occupy the lands of which they were possessed and to govern themselves. After the American Colonies had won independence from England they succeeded to her rights in this Indian territory. As Judge Parker pointed out in United States v. Wright, 53 F.2d 300, 302 (4th Cir. 1931):

"The result of this was that the sovereignty over the territory embraced within the several states, together with the title to land not previously granted, passed to these states, subject to the possessory right of the Indians over the lands which they occupied. * * * And, when the right of the Indians was extinguished as to any particular land, this right passed to the state in which the land was situate. The several states thus asserted a title to these lands, which was independent of the will of the Indians, and which took effect, in point of possession, when the right of the Indians ceased. * * * "

By the treaty of New Echota the Cherokee Nation surrendered all right to any land in North Carolina and agreed to move west of the Mississippi. Some of the Indians remained, but in doing so they lost their interest in the lands and their right of self-rule. They were now subject to the laws of the State of North Carolina. The lands which these Indians now hold are under grant from the state.

In United States v. Wright, supra, the court recognized that, even though the Eastern Band of Cherokee Indians had severed the tribal connection and had become subject to state law, it did not destroy the guardian relationship which the federal government had assumed for its protection and regulation. But in that opinion, at page 307, the court said:

" * * * It is clear, however, that not every act of Congress with relation to the band would come within the power. As heretofore stated,

the members of the band, by separation from the original tribe, have become subject to the laws of the state of North Carolina; and clearly no act of Congress in their behalf would be valid which interfered with the exercise of the police power of the state. In such a situation, a law to be sustained must have relation to the purpose for which the federal government exercises guardianship and protection over a people subject to the laws of one of the states; i. e., it must have reasonable relation to their economic welfare. * * * "

When the Cherokee Nation in 1835 agreed to surrender its land and remove itself beyond the Mississippi it did so in consideration of monetary compensation and a grant of new lands in the west. The Congress, by entering into the treaty of New Echota, dissolved the tribal government of the Cherokees east of the Mississippi and re-established it west of the Mississippi. By that treaty members of the Nation who remained were given the benefit of, and made subject to the laws of the state. Since that time North Carolina has exercised jurisdiction over criminal acts committed by Indians on and off the reservation.

 ˙When Sections 1151 and 1153 of Title 18 U.S.C.A. were enacted by Congress in 1948 they incorporated and codified the treaty of New Echota of 1835. The intention of the legislators was not to circumvent or override the treaty, but to effectuate it and to regulate and control the prosecution of Indians in an area of ten major crimes where such crimes were unaffected by treaties previously entered into by Congress. Since the treaty of New Echota has not been abrogated, but is still a binding agreement between the Cherokee Nation and the United States government, we cannot theorize that the enactment of Sections 1151 and 1153 was to ignore this treaty. The treaty precludes these two sections from applying to the Eastern Band of Cherokee Indians. Jurisdiction of the two governments is concurrent; the state government derives it from the treaty of New Echota, and the federal government derives it from its position as guardian and protector of these native Americans.

### ORDER

Therefore, it is ordered that the petition for writ of habeas corpus be, and the same is hereby denied.

It is further ordered that the respondent's motion to dismiss be, and the same is hereby granted.