**James Robert CAFFEY, Petitioner,**

v.

**Harold R. SWENSON, Warden, Missouri State Penitentiary, Jefferson City, Missouri, Respondent.**

**Civ. A. No. 18722–3.**

United States District Court,
W. D. Missouri, W. D.

April 13, 1971.

O. J. Taylor, for Neale, Newman, Bradshaw & Freeman, Springfield, Mo., for petitioner.

Kenneth M. Romines, Asst. Atty. Gen., State of Missouri, Jefferson City, Mo., for respondent.

## ORDER GRANTING PETITIONER'S MOTION TO VACATE JUDGMENT OF DECEMBER 31, 1970, AND JUDGMENT DENYING PETITION FOR HABEAS CORPUS

WILLIAM H. BECKER, Chief Judge.

Petitioner, a state convict confined in the Missouri State Penitentiary, petitions this Court for a writ of federal habeas corpus adjudicating as invalid his state conviction of "control of a narcotic drug." Petitioner also requests leave to proceed in forma pauperis. Leave to proceed in forma pauperis has been previously granted.

Petitioner states that he was convicted by a jury in the Circuit Court of Greene County of the offense of "control of a narcotic drug"; that he was sentenced on that conviction on February 9, 1962, to a term of twenty years' imprisonment; that he appealed from the judgment of conviction and imposition of sentence; that his conviction and sentence were affirmed by the Missouri Supreme Court on appeal (State v. Caffey, Mo., 365 S.W.2d 607); that thereafter petitioner filed in the Missouri Supreme Court a "motion to recall mandate" of affirmance on appeal under Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, and Bosler v. Swenson (C.A. 8) 363 F.2d 154, asserting denial of his right to counsel on appeal; that the motion to recall mandate of affirmance on appeal was denied on November 14, 1966; that petitioner subsequently filed a petition for habeas corpus in this Court which was dismissed without prejudice on April 11, 1969, (see Caffey v. Swenson (W.D.Mo.) 298 F.Supp. 994, in which this Court noted that the United States Court of Appeals for the

Eighth Circuit had not determined Bosler v. Swenson, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33, affirming Bosler v. Swenson, *supra*, to be retroactive until the decision in Swenson v. Donnell (C.A. 8) 382 F.2d 248, on August 8, 1967; and that petitioner had opposed being granted a new appeal with counsel, requesting that he be released outright from the penitentiary; accordingly, this Court advised petitioner to file a successive motion to recall mandate of affirmance on appeal requesting the redocketing of his appeal and assignment of counsel); that petitioner subsequently again petitioned this Court in habeas corpus complaining of the Missouri Supreme Court's alleged failure to file his subsequent motion to recall mandate of affirmance on appeal, but that petition was dismissed without prejudice on December 2, 1969 (see Caffey v. Swenson (W.D.Mo.) Civil Action No. 17876–3, in which this Court noted that petitioner should make it clear to the Clerk of the Missouri Supreme Court that his motion was in case no. 49364 in that court rather than in case no. 55151, in which the Clerk had thought the motion was sought to be filed and consequently did not file the motion because the decision on appeal in case no. 55151 had not yet been made); that petitioner also filed a motion to vacate his sentence under Missouri Criminal Rule 27.26, V.A.M.R., in the state trial court which was overruled on October 20, 1969; that thereafter petitioner appropriately filed a motion to recall mandate in case no. 49364 in the Missouri Supreme Court; that the motion was sustained on January 12, 1970, and petitioner was granted a new appeal with the assistance of counsel; that petitioner's appeal from the overruling of his Rule 27.26 motion by the state trial court was then consolidated with his new appeal; and that the Missouri Supreme Court again affirmed the conviction and sentence on September 14, 1970. State v. Caffey, Mo., 457 S.W.2d 657.

As grounds for his contention that his state conviction was secured in violation of his federal rights, petitioner states the following:

"(a) The search warrant which was the basis for the search of petitioner's safe deposit box was invalid because of the lapse of time between the occurrance (sic) of the events relied upon and the time of the issuance of the warrant.

"(b) Petitioner did not receive the effective assistance of counsel at his trial."

Petitioner states the following as facts in support of the above grounds:

"On November 28, 1961, Mr. Donald E. Bonacker, then an assistant prosecuting attorney, filed in the Magistrate Court of Greene County an 'affidavit for Search Warrant' and on that same date the Magistrate Court issued a search warrant to the Sheriff of Greene County, authorizing the search of a safe deposit box theretofore rented to the defendant. On the authority of this search warrant, the sheriff went to the bank and with the aid of a locksmith, caused the lock of the safe deposit box to be drilled and the box opened. The only contents of that box was State's Exhibit 'D' [the narcotic drug seized].

"The affidavit for search warrant signed by Mr. Bonacker did not purport to reflect that Mr. Bonacker had such personal knowledge as would have justified the issuance of a search warrant. To the contrary, the Bonacker affidavit made it clear on its face that it depended on an accompanying affidavit executed by one Doyle Mace, the full text of which was:

'I, Doyle Mace, on this 28th day of November, 1961, being duly sworn state that the following facts are true: During August, 1961, James R. Caffey told me that he had a bottle of a narcotic commonly known as "coke" in his lockbox at the Union National Bank. He also said the "coke" was extremely valuable on the illicit market.'

"Since the alleged statement by petitioner to Mace occurred 'during August, 1961' the lapse of time between the alleged admission and the making of the affidavit was at least 90 days, and possibly as much as 120 days.

"The substance of the information under which petitioner was tried and convicted was the allegation that the defendant:

'* * * on the 28th day of November, A.D., 1961, at the County of Greene and State of Missouri, did then and there wilfully, unlawfully and feloniously, without legal authority, have under his control a narcotic drug, to wit: cocaine hydrochloride. * * *'

"The principal evidence upon which petitioner's trial and conviction depended was a one ounce bottle of cocaine hydrochloride introduced into evidence as state's Exhibit 'D'.

"It is petitioner's contention that the search warrant was issued without a sufficient showing of probable cause due to the lapse of time between the alleged admission and the making of the affidavit.

"Petitioner was represented at trial by appointed counsel. No motion to suppress was filed by counsel prior to or during the course of the trial. At the Rule 27.26 hearing held on September 4, 1969, petitioner's former attorney testified as follows:

'Q. Did you yourself explore the validity of the process whereby the cocaine had been seized from the lockbox?

'A. Mr. Crow, the answer to that, and again according to my best recollection, I did obtain a copy of the search warrant, examined the affidavit made by one Doyle Mace, I believe it was. I then contacted Mr. Frank Knox down at the Union National Bank. I then contacted a Miss McCorkle who was the custodian of the safe deposit vault at the Union National Bank, and examined the ledger card that the bank keeps showing entry to a specified safe deposit vault. After I had followed that procedure, in my opinion, the affidavit and warrant being in proper form and the information disclosed on the entry card for the safety deposit box, I made no suggestion that a motion to suppress be filed. I didn't even discuss it, I might add, with Mr. Caffey.'

"In connection with this same matter, the attorney testified on cross-examination:

'Q. I take it when you examined the court file, the affidavit of Doyle Mace and so forth, you were looking at these with a view of determining whether there was any basis for a motion to suppress?

'A. I'll be frank to admit, at that time, Mr. Taylor, a motion to suppress was not thought of or contemplated by me. I was looking at them to see if the affidavit was in proper form, if it disclosed probable cause for issuance of a search warrant and if those facts were substantiated by the records of the Union National Bank.'

"The attorney was then referred to an annotation contained in 100 A.L.R.2d, cited in support of this position, and was asked whether such a line of authorities entered into his thinking at that time. The attorney answered:

'A. Not from your A.L.R. I don't recall any cases—well to answer your question, no, it did not, Mr. Taylor. The motion to suppress in 1961 was not quite the lady of the courtroom that it is today.'

"The defendant testified in his 27.26 hearing that he asked his appointed counsel to check into the validity of the search warrant and inquired whether the attorney could make a motion to suppress the evidence. He testified that the attorney came back at a later date and said that a motion to suppress would have been frivolous because all of the court papers were in order.

"It is petitioner's contention that he was denied the effective assistance of counsel by reason of counsel's ignorance of Fourth Amendment requirements of probable cause and his failure to file a timely motion to suppress the evidence seized upon a search warrant which was obtained without a sufficient showing of probable cause."

The official report of the Missouri Supreme Court's decision of September 14, 1970, shows that petitioner raised the following contentions which were considered by the Missouri Supreme Court in petitioner's consolidated appeals from the overruling of his Rule 27.26 motion and from his conviction and sentence:

(1) the search and seizure which resulted in the discovery of the narcotics with which petitioner was charged with possessing was unlawful;

(2) petitioner was deprived of his constitutional right to the effective assistance of counsel at his trial because his appointed counsel failed to file a motion to suppress State's Exhibit D (the drug seized);

(3) petitioner was denied effective assistance of counsel because counsel was not appointed for him at his preliminary hearing in magistrate court;

(4) the trial court erred in overruling petitioner's motion for acquittal based on Section 195.110 RSMo., V.A.M.S. excepting possessors of drugs lawfully dispensed by a physician from criminal liability.

Petitioner does not specifically raise the last ground in his petition in the case at bar. But that contention must nevertheless be considered in this action because in exceptional circumstances it exists as a potentially good ground for the possible granting of relief in federal habeas corpus because of possible denial of equal protection of the laws. Cf. Taggert v. Swenson (W.D.Mo.) 313 F.Supp. 146, 147.

The official report of the decision of the Missouri Supreme Court, Division One, affirming the denial of petitioner's postconviction motion, also shows that a dissenting opinion was written by Judge Seiler of that Court.

Because it appeared that petitioner may have stated the denial of one or more of his federal rights, the show cause order was issued herein on October 12, 1970. After the filing of the response by respondent and the traverse thereof by petitioner, the parties were granted time in which to file their respective briefs. All briefs were filed, and on December 31, 1970, the Court entered its judgment dismissing the petition herein for habeas corpus without prejudice for failure of petitioner to have moved for a rehearing and transfer to the Missouri Supreme Court en banc. In that judgment, the Court stated as follows:

"From the petition, the response to the show cause order, the traverse of the response and the briefs filed herein by the parties, it is clear that the petition herein should be dismissed without prejudice for failure of petitioner to exhaust his currently available state remedies. In the absence of exceptional circumstances not stated to be present in the case at bar, a state prisoner must exhaust his currently available state remedies before invoking federal habeas jurisdiction. Section 2254, Title 28, United States Code; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. Under the provisions of subsection (c) of Section 2254, *supra*, a state prisoner's state remedies are not deemed to be exhausted so long as he may present his claim to the state courts by 'any available procedure.' Article 5, Section 9 of the Constitution of 1945 of the State of Missouri, V.A. M.S., clearly provides for an available procedure by which petitioner's claim may be considered by the Missouri Supreme Court en banc when any member of a Division of that Court dissents. That section reads as follows:

'A cause in the supreme court shall be transferred to the court en banc when the members of a division are

equally divided in opinion, or when the division shall so order, or on application of the losing party when a member of the division dissents from the opinion therein, or a federal question is involved, or pursuant to supreme court rule.'

It has long been held by the Courts of Missouri that the transfer of the claim to the Missouri Supreme Court en banc thus provided for is a right to which the losing party is 'entitled' on his application therefor. See State v. Hamey, 168 Mo. 167, 67 S.W. 620, 621. The right exists for 15 days under the Rules of the Supreme Court of Missouri. But it has been established since Gorman v. Washington University, 316 U.S. 98, 62 S.Ct. 962, 86 L.Ed. 1300, that State remedies are not exhausted, in a case where the above constitutional provision applies, until the Missouri Supreme Court en banc has ruled on the merits of the claim. That case involved the federal question of whether certain tax assessments violated the contract clause of the federal constitution by violating tax-exemption provisions of Washington University's charter. The case had been decided by Division One of the Missouri Supreme Court. The United States Supreme Court noted that 'It does not appear that the judgment thus rendered has been reviewed by the Supreme Court sitting en banc or that petitioners have made application, as they could have done under § 4 of the 1890 amendments to Article 6 of the state constitution, to transfer to the full court for review.' [62 S.Ct. at 963] 86 L.Ed. at 1301. The Supreme Court went on to state that the purpose of the statute controlling its jurisdiction was 'that no decision of a state court should be brought here for review either by appeal or certiorari until the possibilities afforded by state procedure for its review by all state tribunals have been exhausted,' [62 S.Ct. at 963] 86 L.Ed. at 1302, and that those remedies had not been exhausted for the following reasons:

'Under these provisions Division One of the Supreme Court of Missouri, sit-

ting in the present cause, in which "a federal question is involved," was not the last state court in which a decision of that question could be had. Such a case is one which "after final disposition of the cause by the division" could on petitioners' application be transferred to the full court for review, and the decision and judgment rendered by Division One could be set aside by the court sitting en banc. Since the constitution of Missouri has thus provided in this class of cases for review of the judgment of a division, the judgment here of Division One is not that of the "highest court of the state in which a decision could be had".' [62 S.Ct. at 963] 86 L.Ed. at 1302.

The principle is applicable in the case at bar. The similar purpose behind the statute governing this case, Section 2254, *supra*, is that all possible state remedies be exhausted prior to the invoking of federal habeas jurisdiction. Therefore, the petition herein for habeas corpus should be dismissed without prejudice for failure of petitioner to exhaust his currently available state remedies.

"In support of a contrary conclusion, petitioner cites Brown v. Heyd (E.D.La.) 277 F.Supp. 899, affirmed (C.A. 5) 406 F.2d 346, wherein it was held that a state habeas corpus petitioner who had suffered a denial of his appeal in the state supreme court should not be required to seek a rehearing in the state supreme court as a condition of exhausting his state remedies. In reaching that conclusion, the Court in that case reasoned as follows:

'There apparently are no reported decisions dealing with the question whether the doctrine of exhaustion of remedies requires an applicant for habeas corpus to seek a rehearing from a state supreme court that has denied his appeal. But in Re McCoy, in the United States District Court for the Eastern District of North Carolina, dealing with a slightly different factual situation, indicated the current view with respect to what an applicant must

do before applying to a federal court for habeas corpus.

"In considering the question of the exhaustion of state remedies, it should be noted that in recent years the federal courts have construed the doctrines as codified in Title 28 U.S.C.A. § 2254 with liberality. No longer is the applicant obligated to seek other remedies available to him once he has presented his contention to the highest state court and has had denied there the relief sought. 233 F.Supp. 409, 411 E.D.N.C., 1964." ' 277 F.Supp. at 902.

But under Missouri law that case is not applicable. The highest court in this case is the Supreme Court of Missouri en banc. As the United States Supreme Court held in Gorman v. Washington University, *supra*, under the predecessor to Article 5, Section 9 of the Missouri Constitution of 1945, a decision by Division One of the Missouri Supreme Court (which division rendered the opinion on September 14, 1970, on petitioner's appeal), *does not constitute a decision* by the 'highest state court' when transfer to the Court en banc under the applicable constitutional provision is available. Further, a rehearing is not a right; it is rather discretionary with the Court and its grant or denial may or may not affect the prior decision. Further, motions for rehearing may be limited to matters overlooked in the original opinion. On the other hand, under the provisions of the Missouri Constitution, transfer to the Missouri Supreme Court en banc is a right and when the case is transferred to the full court, it stands 'before the Court en Banc anew, for submission and disposition de novo, and as though the case had never been before [a] Division * * of [the Missouri Supreme Court] at all.' Hall v. Brookshire, 364 Mo. 774, 267 S.W.2d 627. The distinction between a rehearing and the Missouri procedure for transfer to the Supreme Court en banc, as it affects the exhaustion of state remedies, was pointed out by the United States Supreme Court in Local 174,

Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Company, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593, wherein it was asserted that State remedies in Washington had not been exhausted when no rehearing before that State's supreme court en banc had been sought. The United States Supreme Court denied the contention, stating as follows:

'It is evident * * * that the law governing rehearings in the Supreme Court of Washington is quite unlike the particularized provisions of Missouri law which led this Court to dismiss the writ in Gorman. .

'As the opinion in Gorman pointed out, the Constitution of the State of Missouri expressly conferred the *right* to an en banc rehearing by the Supreme Court of Missouri in any case originally decided by a division of the court in which a federal question was involved. It was this provision of the state constitution which was the basis for the conclusion in Gorman that the State of Missouri did not regard a decision by a division of the court as the final step in the state appellate process in a case involving a federal question. "[T]he constitution of Missouri," it was said, "has thus provided in this class of cases for review of the judgment of a division. * * *" 316 U.S. at 100 [62 S.Ct. at 963]. (Emphasis in original.)

'By contrast, a rehearing en banc before the Supreme Court of Washington is not granted as a matter of right. The Constitution and statutes of the State of Washington authorize its Supreme Court to sit in two Departments, each of which is empowered "to hear and determine causes, and all questions arising therein." Cases coming before the court may be assigned to a Department or to the court en banc at the discretion of the Chief Justice and a specified number of other members of the court. The state law further provides that the decision of a Department becomes a final judgment of the Supreme Court of

Washington, unless within 30 days a petition for rehearing has been filed, or a rehearing has been ordered on the court's own initiative.' [82 S.Ct. at 574] 7 L.Ed.2d at 597.

The *Gorman* case, *supra,* was a civil case which was decided before the trilogy of 1963, and may not be fully applicable in a federal habeas corpus petition by a state prisoner. Fay v. Noia, *supra;* Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. But it is applicable in the current circumstances when there is an opportunity to seek leave to move to transfer to the Supreme Court of Missouri en banc. It appears that, under the provisions of Rule 84.02 of the Missouri Rules of Civil Procedure, a motion to transfer a cause to the Missouri Supreme Court en banc after a decision by either division is required to be filed 'within fifteen days after the opinion of the court shall be delivered.' This time has now run in petitioner's case. Rule 44.01, Mo.R.Civ.P., however, applies to all of the Missouri Rules of Civil Procedure, except certain specified rules which do not include Rule 84.02, *supra.* Under its provisions:

'When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon notice and motion made after the expiration where the failure to act was the result of excusable neglect. * * *'

Therefore, petitioner has currently available under Rule 44.01 an unexhausted state remedy, namely, the right to move for an order granting leave to file the motion to transfer the cause to the Court en banc (and to recall the mandate of affirmance if it has issued). Petitioner should therefore apply to the Missouri Supreme Court, Division One, for a transfer of his cause to the Missouri Supreme Court en banc and for an enlargement of time, on a showing of excusable neglect, in which to file the motion."

Thereafter, on January 29, 1971, the judgment of December 31, 1970, was set aside and re-entered in order to give petitioner an opportunity to file a motion to vacate the judgment because of counsel's representation to the Court that he had not received notice of the judgment in time to file a motion to vacate or effectively to protect petitioner's right to appeal.[1]

Subsequently, on February 8, 1971, petitioner filed his motion to vacate the judgment of January 29, 1971, stating as follows:

(1) Gorman v. Washington University, *supra,* is not applicable to the exhaustion issue in this case because it pertains only to United States Su-

---

I. The vacating of the judgment was accomplished under the provisions of Rule 60 (b), F.R.Civ.P., providing for relief from judgment in such instances. The order entered on January 29, 1971, stated as follows:

"Counsel for petitioner has called it to the Court's attention that he did not receive a copy of the judgment entered herein on December 31, 1970, until after the time in which he might have filed a motion to vacate or amend judgment had expired and that his knowledge of the decision herein was not accomplished soon enough for him to protect petitioner's right of appeal. In cases in which lack of notice of judgment 'has operated to prejudice a substantial right or remedy that would otherwise have been available,' relief from the judgment under Rule 60(b), F.R.Civ.P., is appropriate. Radack v. Norwegian America Line Agency, Inc. (C.A. 2) 318 F.2d 538, 543. Because the judgment of December 31, 1970, will be reentered on the below date, no prejudice will have been suffered by respondent. It is therefore

"Ordered that the judgment dismissing petition for habeas corpus without prejudice entered herein on December 31, 1970, be, and it is hereby, vacated."

preme Court jurisdictional standards, as the statute for Supreme Court jurisdiction specifically states that the case must be ruled on by the "highest state court" before the United States Supreme Court may take jurisdiction.

(2) The "right" to transfer to the Court en banc expired 15 days after the entry of the decision by Division One. Thereupon it became subject to the discretion of Division One on the application for extension of time under Rule 44.01.

(3) Other cases have been considered by federal courts in which no transfer or rehearing in the Missouri Supreme Court has been sought. Specifically, it is stated:

"Finally, we would like to call attention to the 8th Circuit opinion of January 25, 1971, in Jack Virgil Caffey v. Harold R. Swenson, No. 20338 [437 F.2d 70]. At page 2 of the slip opinion, the Court said:

'The district court found, and appellee concedes, that state court remedies on this single contention of the denial of a speedy trial have been fully exhausted.'

"The Supreme Court opinion in State v. Caffey, 445 S.W.2d 642, 647, reflects a dissenting opinion. The report does not reflect a motion for transfer to the court en banc, and counsel is advised that no such motion was filed. It might be noted parenthetically that, as the Court may already realize, Jack Virgil Caffey and James Robert Caffey are brothers. Each is confined at the Missouri State Penitentiary and each is familiar with the other's litigation. It is understandable that the two of them may be considerably perplexed by court rules which require this petitioner to ask for a transfer to the Supreme Court en banc, and not to require the same of his brother."

■ The reasoning of the motion to vacate the judgment is without merit. As pointed out in the judgment of dismissal of December 31, 1970, transfer and rehearing to the Missouri Supreme Court en banc, to which petitioner is entitled on his application therefor under Missouri law, is a currently "available procedure" within the meaning of Section 2254(c), *supra*, by which he may present his claim to the courts of Missouri. Further, the question of whether the right existed when 15 days had passed since the rendering of the decision by Division One was one which could only be decided by Division One of the Missouri Supreme Court on petitioner's application for an extension of time in which to make application for the transfer and rehearing. Petitioner, however, elected to file the motion to vacate in this Court rather than to apply for the extension, thus indicating a willingness to waive any right which he might have rather than to attempt to establish its presence.[2] Further, in the case of petitioner's brother in this Court, Jack Virgil Caffey v. Harold R. Swenson (W.D. Mo.) Civil Action No. 18232–3, this Court did not find that Jack Virgil Caffey had exhausted his state remedies with respect to the speedy trial issue. In that case, the Court stated:

"Respondent also admitted in the response that petitioner had exhausted his currently available state remedies in respect of his contention that he had been denied a speedy trial. Since petitioner had apparently raised that issue in the Missouri Supreme Court on his direct appeal from his conviction, and the Missouri Supreme Court had considered the ground on its merits and decided it adversely to petitioner, petitioner *may* have exhausted his state remedies in respect of this contention." (Emphasis added.)

Because this Court was of the opinion that Jack Virgil Caffey had not other-

2. It is readily apparent that 15 days had passed since the divisional decision in the *Gorman* case; yet the United States Supreme Court did not consider that the right had disappeared.

wise exhausted his state remedies, it was unnecessary to determine whether he had also failed to exhaust state remedies by failure to seek a rehearing in and transfer to the Missouri Supreme Court en banc. Subsequently, on appeal of that case to the United States Court of Appeals for the Eighth Circuit, the state did not raise the question of exhaustion by means of transfer and rehearing in the Missouri Supreme Court, as they did in the case at bar. Petitioner's motion to vacate the judgment of dismissal previously entered herein is therefore without merit.

■ Because the complete record of the state proceedings which has been filed in this case reveals that petitioner's contentions are not availing on their merits, however, the motion to vacate the judgment will be granted so that the petition herein for habeas corpus can be denied (1) for failure to exhaust state remedies and (2) on its merits.

■ First, with respect to petitioner's allegation of illegal search and seizure, the Missouri Supreme Court refused to rule directly on the contention "for the reason that a claim of illegal search and seizure is not such a matter as may be raised in a collateral attack upon a judgment of conviction," 457 S.W.2d at 659, and because "Caffey filed no motion to suppress the evidence, made no objection to the admission of the narcotic in evidence, and failed to assign

error with respect thereto in his motion for new trial." *Id.* The fact that the state rule may prevent the state court from making a postconviction ruling on the issue, however, does not preclude its consideration in the federal court on federal habeas corpus. In Henry v. Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564, 569–570, 13 L.Ed.2d 408, 415, it was stated that, in cases where the petitioner's default in following a state procedural rule warranted the stated court's refusal to consider an issue, the state court finding of waiver only meant:

" * * * that petitioner could have a federal court apply settled principles to test the effectiveness of the procedural default to foreclose consideration of his constitutional claim. If it finds the procedural default ineffective, the federal court will itself decide the merits of his federal claim, at least so long as the state court does not wish to do so." 379 U.S. at 452, 85 S.Ct. at 570, 13 L.Ed.2d at 416.

Under applicable federal standards announced by the Supreme Court of the United States in Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227, petitioner's failure to object to the admission of evidence which he now contends was illegally seized cannot be deemed a procedural default effective to bar his rights in federal habeas corpus.[3] In *Kaufman, supra,* it was held that the issue of illegal search and seiz-

---

3. In Losieau v. Sigler (C.A. 8) 421 F.2d 825, it was pointed out that a federal court is not bound to find intentional bypass of state remedies simply because the state court did:

"Federal courts, in considering the validity of a state prisoner's procedural forfeiture in a state court, have long been required to apply federal constitutional standards to the problem of a knowing and intentional waiver. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) ; Johnson v. Zerbst, [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)] See discussion of 'Problems of Federal Habeas Corpus Involving State Prisoners,' 45 F.R.D. 45 at 59. [Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227

(1969)] did not alter this law or in any way change the state's responsibility in conducting evidentiary hearings. The state may still hold that it is within their procedural interests to bar a prisoner from raising constitutional issues for the first time in post-conviction proceedings. However, whenever a state does so, such a holding can only be frowned upon because, as was the rule prior to *Kaufman,* a federal court must still inquire whether the procedural bypass was a knowing and deliberate waiver under federal standards. *Kaufman* does not change the law governing state prisoners; it simply points up the futility of a federal procedural bypass rule." 421 F.2d at 828. On the facts shown by the Rule 27.26 hearing in the case at

ure might be raised on collateral attack of a federal sentence even in a case in which it had not been raised on appeal. Further, the rather narrow legal point made by petitioner is amenable to being decided in this Court without a further hearing. Although the state courts did not determine the question, a full evidentiary hearing was held on the issue of illegal search and seizure in the Rule 27.26 proceedings in the state trial court. The evidence clearly showed, as stated by petitioner in his petition in the case at bar, that the warrant for the search of the safe deposit box of petitioner was based upon the statement of one Doyle Mace made in an affidavit on November 28, 1961, that petitioner had told him in August 1961 that petitioner had the narcotic commonly known as "coke" in his lockbox at the Union National Bank. "The facts on which [petitioner] bases his claim were not controverted. Thus there was no necessity for a hearing in the district court. * * * " Allen v. Ciccone (C.A.8) 425 F.2d 989, 990. The federal district court, in a habeas corpus proceeding challenging a state conviction, "may independently rely on facts reliably found by the trial court in its application of current federal standards, or in the alternative independently find the facts from all the evidence in the habeas corpus record." Meller v. Swenson (W.D.Mo.) 309 F.Supp. 519, 522, affirmed (C.A.8) 431 F.2d 120. The evidence adduced in petitioner's trial was uncontradicted that the box searched was the "safety deposit vault" into which only the petitioner and Virginia Caffey had access. (Tr. 20–22, 40, 41.) Petitioner's only contention is that the time of his making of the statement to Mace in August 1961 was too remote in time from the making of the affidavit in November 1961 for the affidavit to have constituted effective "probable cause" for the issuance of the warrant. Reliance is placed upon an Annotation at page 525 of 100 A.L.R.2d entitled "Search warrant: sufficiency of showing as to time of occurrence of facts relied on." Therein, it is stated that "[a]n interval of 2 months or more between act and affidavit has always been held such an unreasonably long delay as to vitiate the ensuing search warrant." *Id.* at 541. See also Durham v. United States (C.A. 9) 403 F.2d 190, 194, n. 6, holding that a space of four months between the alleged criminal activity and the making of the affidavit was unreasonably long. In that case, however, it is correctly noted that, "The length of the time lapse alone is not controlling since even a brief delay may preclude an inference of probable cause in some circumstances while in others a relatively long delay may not do so." *Id.* In the A.L.R.

bar, it cannot be concluded that a deliberate bypass of state remedies was carried out by failure to object or move for suppression of the "coke" at the original trial. Solely on this failure the Missouri Supreme Court premised its conclusion that petitioner had bypassed his state remedies. But the conclusion was not made that the bypass was intentional. It was rather justified on the basis of the procedural rule that the issue of unlawful search and seizure is not proper for collateral attack in Missouri. On the evidence at the Rule 27.-26 hearing, no knowing waiver is shown under applicable federal standards. Petitioner testified without contradiction that he did not have any familiarity with the law of search and seizure at that time. Further, his counsel admit-

ted that it did not occur to him to file a motion to suppress based upon the contentions which are made in these postconviction proceedings. In fact, on this basis, the trial court expressed its opinion that there was "[no] meaningful waiver by movant of his constitutional right against any unreasonable search and seizure," but deferred to the Missouri Supreme Court to make the final decision on whether the issue could be raised on petitioner's new, reinstated direct appeal. Again, however, the Missouri Supreme Court applied a strictly procedural rule in noting the failure of petitioner to object or assign error on motion for new trial. Federal standards of deliberate bypass, however, are not met in this case with respect to this issue.

Annotation relied on by petitioner, the basis of the rule is stated as follows:

"The requirement that an affidavit for a search warrant state the time of the occurrence of the facts relied upon is based on the necessity that there exist at the time the warrant is issued probable cause for believing that the facts relied upon still continue to exist." 100 A.L.R.2d at 534.

In this case, wherein the evidence shows that only petitioner and Virginia Caffey had exclusive access to the safety deposit box and there was no evidence that the box was opened between August 1961 and the time of issuance of the warrant, probable cause existed to believe Mace's affidavit that the narcotic was still in the safety deposit box on November 28, 1961.[4] "Probable cause is based on the situation existing at the time of the issuance of the warrants." United States v. Hanon (C.A.8) 428 F. 2d 101, 104. Because the affidavit is made upon the affiant's personal knowledge, the standards of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637, and Aguilar v. Texas, 378 U. S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, are met by the facts in the case at bar. Under current federal standards applicable at the time of the issuance of the warrant, therefore, it is concluded that the search and seizure of the narcotic in the safety deposit box of the Union National Bank was not unlawful.

By the same reasoning, petitioner's second contention that he was denied the effective assistance of counsel because his appointed counsel did not file a motion to suppress the evidence obtained by means of the lawful search and seizure, must be deemed without factual merit. According to the uncontradicted testimony of petitioner's appointed counsel in the Rule 27.26 hearing, counsel checked the form of the affidavit and checked the truth of the allegations therein, insofar as it was possible, with personnel of the Union National Bank. His conclusion that it would have been unavailing to file a motion to suppress proved correct. Since the motion has proved to be groundless in this Court, the claim of ineffective assistance of counsel in failure to file the motion should not be sustained. Further, petitioner's testimony that he urged his appointed counsel to file such a motion is contradicted by counsel's testimony that the matter was not discussed with petitioner. It is hereby found that petitioner failed to meet the burden of proof on this issue. And the point of law which counsel was unaware of was not only, as the Missouri Supreme Court found, "an unusual point, so rare that it had not reached the appellate courts of this State in almost 150 years of litiga-

---

4. The dissenting opinion of Judge Seiler at 457 S.W.2d 665, 666, in this regard, states as follows:
"As I understand it, the magistrate did not have before him the information that the bank records showed no one had entered the box since the preceding December. No such evidence was adduced at the time the warrant was issued. The validity of the search warrant cannot be determined on information subsequently discovered which would have supported it, but which was unknown to and hence not considered by the magistrate in determining whether probable cause had been shown him for the issuance of the warrant. It was good or bad when issued. In re Search Warrant of Property at Apartment No.

7 (Mo.Sup.) 369 S.W.2d 155, 158, but counsel overlooked this."
It is clear from the record, however, that the affidavit of Mace itself used the term "lockbox," a term having a well established common meaning and which would indicate that petitioner would have had exclusive access to the box. See, e. g., Webster's Third New International Dictionary, p. 1328, defining such a box as a "strongbox or safe-deposit box" which is "accessible to the renter by means of a key." In Black's Law Dictionary, 4th Ed., p. 1501, a "safe deposit company" is defined as one which maintains, among other things, boxes "rented to customers who have exclusive access thereto, subject to the oversight and under the rules and regulations of the company."

tion," 457 S.W.2d at 663, but it was a point which would not have aided petitioner had it been raised in the trial. In this respect, petitioner was accorded effective and assiduous assistance of counsel, who took pains to inquire into the truth or falsity of the affidavit.[5] His contention of ineffective assistance of counsel is therefore without merit.

■ Petitioner's third contention of denial of effective assistance of counsel because he was not appointed counsel at his preliminary hearing is also without merit as a claim of denial of federal rights. Petitioner cites the recent decision of the United States Supreme Court of the United States in Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, holding that the preliminary hearing in Alabama is a "critical stage" of the proceedings against an accused in which he is entitled to be represented by counsel. Regardless, however, of the comparability of the Alabama preliminary hearing to the Missouri preliminary hearing, the United States Court of Appeals for the Eighth Circuit has determined in Konvalin v. Sigler (C.A.8) 431 F.2d 1156, 1159–1160, that *Coleman* is not retroactive in its application. It is not applicable in this case for that rea-

son. Petitioner's contention of ineffective assistance of counsel in this particular must therefore be denied.

■ Petitioner's fourth and final contention—that the state trial court erred in overruling his motion for acquittal in which petitioner claimed that he was exempt from criminal liability within the meaning of § 195.110 RSMo V.A. M.S.,—does not state the denial of any federal right. No facts are alleged or proved which would show denial of equal protection of the laws, the only possible federal ground. Habeas corpus does not serve as a substitute for review of non-constitutional trial irregularities. Scalf v. Bennett (C.A.8) 408 F.2d 325. As the Missouri Supreme Court noted on this issue, the jury was not required to believe petitioner's statements to officers who repeated them at the trial that the drug had been prescribed to him. Further, the circumstantial evidence that it had been in the lockbox for over a year negatived circumstantially the contention that it had been prescribed for his personal use.

All of petitioner's contentions that his state conviction is invalid for having been secured in violation of his federal

---

5. The reliable findings of the Missouri Supreme Court on this issue are as follows:
"From this record it appears that assigned counsel investigated the facts relating to the question of probable cause, examined the lockbox records at the bank (from which it was evident that there was every reason to believe that cocaine in the box August 1 was still there), read and considered the affidavit and warrant and made a considered judgment, based upon both the affidavit and the extraneous facts that the magistrate had probable cause to believe that Caffey had cocaine under his control in that box." 457 S.W.2d at 661.
From the state courts records, it also appears that the Missouri courts viewed the allegation of ineffective assistance of counsel to include the entire performance

of counsel, the Missouri Supreme Court finding that "assigned counsel's representation considered as a whole was competent and valuable." 457 S.W.2d at 662. In his petition in this case, however, petitioner expressly limited the contention to the failure of counsel to move to suppress or otherwise object to the admission of the evidence produced by the allegedly illegal search and seizure. Under the decision of the United States Court of Appeals for the Eighth Circuit in McClain v. Swenson (C.A. 8) 435 F.2d 327, there is some authority for constricting a petitioner's contentions strictly in accordance with those raised specifically in the district court. Caffey v. Swenson (C.A. 8) 437 F.2d 70 (January 25, 1971). Further, from the state record, it appears that no claim of ineffective assistance of counsel is justified in any other respect.

rights are therefore without merit. The petition herein must be denied (1) for failure to exhaust state remedies, and (2) on its merits.[6]

6. Petitioner has stated that he wishes to offer no further evidence on this petition for habeas corpus. In response to an order of this Court, inviting petitioner to state whether he wished to adduce additional evidence and, if so, to state what items of evidence he wished to adduce under the standards of Townsend v. Sain, 372 U.S. 293, 313, 314, 83 S.Ct. 745, 757–758, 9 L.Ed.2d 770, 786, and Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524, counsel for petitioner stated as follows in a letter dated April 7, 1971:

"I have now received a letter from Mr. James R. Caffey, concurring in my view that we do not desire to offer additional evidence on the search and seizure question in this case. Therefore, I am authorized on behalf of my client to advise the Court that an evidentiary hearing is not desired, and the Court may proceed with a decision on the existing record."